Sean K. GALLAGHER, Plaintiff–Appellee and Cross–Appellant,

v.

BOARD OF TRUSTEES FOR the UNIVERSITY OF NORTHERN COLORADO and the University of Northern Colorado, Defendants–Appellants,

and

James Zakely, Defendant and Cross–Appellee.

No. 99CA1081.

Colorado Court of Appeals, Div. II.

Sept. 28, 2000.

Certiorari Granted Feb. 20, 2001.

Vinton Nissler Allen & Vellone, P.C., Kristen L. Mix, Michael A. Vellone, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Ken Salazar, Attorney General, Douglas J. Cox, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants and Defendant and Cross–Appellee.

Opinion by Judge NIETO.

Defendants, the Board of Trustees for the University of Northern Colorado and the University of Northern Colorado (collectively UNC), appeal the denial of their motion to dismiss the complaint brought against them by plaintiff, Sean K. Gallagher. Plaintiff cross-appeals from the dismissal of his defamation claim against defendant, James Zakely. We affirm in part, reverse in part, and remand with directions.

Plaintiff had been employed by UNC since 1970. In 1994, he detected several allegedly suspect financial and accounting practices in his department, including improper fund transfers, creation and utilization of a slush fund, and improper vendor contracts. He first disclosed his concerns to his supervisor in May 1994. Based upon a perceived lack of action, he brought his concerns to higher levels of management and eventually informed numerous managers and employees of UNC.

Plaintiff alleged that his supervisor began to retaliate against him shortly after he made his first complaint. He asserts that the retaliatory acts were subtle at first (ignoring him, excluding him from meetings, ridiculing him), but became more extreme and pervasive over time. Plaintiff alleged that UNC officials eventually threatened his job, improperly evaluated his performance, changed the funding for his position, stripped away all of his supervisory duties, and assigned him a single function, for which he did not have any experience and which had been one of several functions performed by another employee.

Plaintiff further alleged that in the spring of 1997, Zakely, who was the director of UNC's Academic Advising Center, made a defamatory comment about him to other UNC employees prior to a staff meeting. The substance of the comment, which concerned why plaintiff was no longer working at UNC, was that he had "heard that [plaintiff] had been accused of smelling like marijuana."

In March 1997, plaintiff suffered an emotional collapse, allegedly because of the cumulative effect of the retaliatory treatment. He then took a leave of absence and eventually, after being diagnosed with clinical depression, took a disability retirement in February 1998.

On July 24, 1997, plaintiff filed a notice of claim with the Office of the Colorado Attorney General, setting forth the alleged retaliatory conduct taken against him and describing the alleged defamatory comment regarding marijuana. Plaintiff supplemented the notice of claim one week later by providing a copy of an administrative appeal he was pursuing.

Thereafter, on February 17, 1998, plaintiff filed this action, asserting that UNC had improperly retaliated against him in violation of § 24–50.5–103, C.R.S.2000, the whistleblower statute. Plaintiff alleged that the various disclosures he had made were protected under the statute. Plaintiff also asserted a defamation claim against Zakely based on the "marijuana" comment.

Pursuant to C.R.C.P. 26(a)(1), plaintiff subsequently disclosed a document entitled "Chronology of Protected Disclosures." This document listed when, where, and to whom plaintiff had made comments regarding the alleged financial irregularities. Plaintiff also disclosed a document entitled "Retaliation Chronology." This document listed the retaliatory actions that he alleges were taken against him during the period from 1994 through 1997. It specified the action taken, when it was taken, and who had taken the action.

Defendants filed a combined motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA) and for summary judgment. UNC argued that to the extent plaintiff's claims under the whistleblower statute were for retaliatory actions taken more than 180 days prior to when he filed his notice of claim, they were barred under the GIA for failure to provide timely notice of claim. As pertinent here, Zakely also sought dismissal of the defamation claim on the basis that it did not fall within an area for which immunity under the GIA had been waived.

In response, plaintiff argued that his notice of claim was timely. He argued that the "gravamen" of his injuries was the emotional collapse in 1997, and that the notice of claim was filed within 180 days of that incident. Plaintiff also argued that the "continuing violation" doctrine lent support to the proposition that his notice of claim was timely. Plaintiff further argued that the GIA did not apply to Zakely because he was being sued for conduct that fell outside his official duties as a UNC employee.

In reply, UNC reiterated the argument that the vast majority of the incidents relied upon by plaintiff did not occur within 180 days of when he filed his notice of claim. UNC also argued that the continuing violation doctrine was not applicable because a claim under the whistleblower statute may arise from a single disciplinary action. Zakely argued that the protections afforded by the GIA were applicable to the defamation claim because his comment was made during the course and scope of his employment.

The trial court denied UNC's motion to the extent it sought partial dismissal of plaintiff's whistleblower claim. However, the trial court found that Zakely was acting within the scope of his employment when he made the alleged defamatory comment, and thus, granted his motion to dismiss.

UNC appeals from the trial court's decision regarding its motion seeking partial dismissal of plaintiff's whistleblower claim, and plaintiff cross-appeals from the dismissal of his defamation claim against Zakely.

I.

UNC contends that the trial court erred in failing to dismiss that part of plaintiff's whistleblower claim that sought damages for retaliatory incidents that occurred more than 180 days prior to the filing of his notice of claim. UNC claims that plaintiff had been "injured" for purposes of § 24–10–109, C.R.S.2000, when he was subjected to the retaliatory action, not just when he suffered an emotional collapse. We agree with this contention.

■ A claim that is brought under the whistleblower statute is subject to the notice requirements of the GIA. *State Personnel Board v. Lloyd*, 752 P.2d 559 (Colo.1988); *Conde v. Colorado State Department of Personnel*, 872 P.2d 1381 (Colo.App.1994) (noting that the whistleblower statute created a non-contractual, statutory action which is tortious in nature).

■ The notice requirements of the GIA are set forth in § 24–10–109. This statute provides that a claimant, as a jurisdictional prerequisite to suit against a governmental entity, must file a notice of claim with the proper authorities within 180 days after the date of the discovery of the injury, regardless of whether the claimant then knew all of the elements of a cause of action for such injury. Failure to file a timely notice of claim mandates dismissal of the action. *See East Lakewood Sanitation District v. District Court*, 842 P.2d 233 (Colo.1992).

■ The purpose of the notice of claim requirements is to provide the governmental entity with prompt notice so that it may

conduct an investigation of the claim and thereby remedy any problem that may exist, make adequate fiscal arrangements to meet any potential liability, and prepare a defense to the claim. *See Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo. 1990). Accordingly, a party may not ignore evidence which would cause a reasonable person to know that he or she has been injured by the tortious conduct of another. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993).

As defined by the GIA, an "injury" includes: "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort...." Section 24–10–103(2), C.R.S.2000.

Section 24–50.5–103(1), C.R.S.2000, provides that "no appointing authority or supervisor shall initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information." A "disciplinary action" is defined in § 24–50.5–102(1), C.R.S.2000, as:

> [A]ny direct or indirect form of discipline or penalty, including, but not limited to, dismissal, demotion, transfer, reassignment, suspension, corrective action, reprimand, admonishment, unsatisfactory or below standard performance evaluation, reduction in force, or withholding of work, or the threat of any such discipline or penalty.

Pursuant to § 24–50.5–104, C.R.S.2000, any employee in the state personnel system may file a written complaint with the state personnel board within thirty days after the employee knew or should have known of the disciplinary action. Section 24–50.5–105, C.R.S.2000, then provides a statutory right of action in favor of any employee subjected to the prohibited disciplinary action.

Initially, we note that several of the incidents relied upon by plaintiff are alleged to have taken place within 180 days of the filing of the notice of claim. UNC does not seek to bar that part of plaintiff's claim which is premised on these incidents.

As to those incidents occurring more than 180 days prior to the filing of the notice of claim, plaintiff argues that under the continuing violation doctrine, which is discussed in *Patel v. Thomas*, 793 P.2d 632 (Colo.App. 1990), his notice of claim is timely. Under that doctrine, in a proper case, a claimant can link acts occurring outside the limitation period to acts occurring within the period, all of which are said to be part of the same continuing violation of a statute. Plaintiff claims that these incidents culminated in his emotional collapse in 1997. Additionally, plaintiff asserts that the vast majority of his damages arise from this collapse, which occurred within 180 days of giving notice.

In general, the continuing violation doctrine has been limited to cases involving discriminatory conduct. *See Patel v. Thomas, supra* (court applied continuing violation doctrine in determining when a notice of claim under the GIA must be filed for a Title VII sexual harassment action). One division of this court has refused to extend the doctrine to other types of actions. *See Harmon v. Fred S. James & Co.*, 899 P.2d 258 (Colo. App.1994) (refusing to extend continuing violation doctrine to a bad faith insurance claim).

■ We also note that the notice of claim statute has been characterized as a "nonclaim" statute. Section 24–10–109(1), C.R.S. 2000, divests courts of subject matter jurisdiction when a notice of claim is not filed within specified time limits, and it permits no equitable defense. *Brock v. Nyland*, 955 P.2d 1037 (Colo.1998). Accordingly, other divisions of this court have held that the statute requires strict compliance with respect to timely filing the notice of claim. *See McMahon v. Denver Water Board*, 780 P.2d 28 (Colo.App.1989) (holding that time for filing notice of claim is not tolled by disability of claimant).

Here, plaintiff alleges that, beginning in August 1994, on numerous occasions UNC retaliated against him in violation of § 24–50.5–103. Section 24–50.5–105 gives plaintiff a cause of action for damages for each of the acts of retaliation. The intent of the General Assembly, as stated in § 24–50.5–101, C.R.S. 2000, is to ensure dissemination of informa-

tion about state government and to prevent retaliation against public employees who make such disclosures. There is no requirement that the damages reach a certain level before a cause of action accrues.

Plaintiff alleges that the retaliation, including performance review violations and ridicule, began very soon after his first protected disclosure. He alleges that this retaliation continued and increased to include threats of termination and reassignment of duties. These alleged acts clearly put defendant on notice that plaintiff was being injured by illegal disciplinary actions prohibited by § 24–50.5–103.

Application of the continuing violation doctrine, under the circumstances of this case, would have the effect of allowing plaintiff to accumulate his damages before requiring him to give the notice of claim required by § 24–10–109(1). This would defeat the purposes of the notice of claim statute, one of which is to permit the governmental entity to remedy the problem that gave rise to the claim. Thus, we conclude that plaintiff cannot invoke the continuing violation doctrine to relate his notice of claim to conduct that caused injury more than 180 days before he filed the notice.

Plaintiff also contends that the injury for which he is seeking damages, his emotional collapse, was discovered in March 1997, and therefore this claim was discovered within 180 days of his notice of claim filed on July 24, 1997. He claims his emotional collapse was the result of "the cumulative effect of the retaliatory treatment he had experienced." If this is true, then the injury is the same type of injury plaintiff suffered from each of the alleged retaliatory acts, differing only in magnitude.

Once plaintiff suffered some injury and knew the cause of the injury, he was required to file his notice of claim within 180 days, even if he did not then know the full extent of the injury. *See Morrison v. Aurora*, 745 P.2d 1042 (Colo.App.1987) (holding that knowledge of the injury and the potential damages triggered the notice of claim requirement of § 24–10–109).

We conclude that the trial court erred in not granting UNC's motion to the extent it sought dismissal of any claim for damages which arose from conduct occurring more than 180 days prior to filing the notice of claim.

## II. Defamation Claim

On cross-appeal, plaintiff asserts that the trial court erred in finding that defendant Zakely's conduct fell within the scope of his employment and, thus, dismissing the defamation claim as barred by the GIA. We disagree.

Plaintiff contends that issues relating to a public employee's immunity from liability under § 24–10–118(2), C.R.S.2000, are matters to be raised as a defense at trial and are not jurisdictional issues to be decided on motions pursuant to C.R.C.P. 12(b)(1). Section 24–10–118(2) provides that a public employee is immune from liability in any tort claim which arises out of an act of the employee occurring during the performance of duties within the scope of his or her employment, unless the act causing such injury was willful and wanton.

Plaintiff alleges that his defamation claim arose from acts outside the scope of Zakely's employment. He does not allege that the acts were willful and wanton. Zakely moved to dismiss the claim, asserting that his acts were within the scope of his employment, and therefore, he was immune from liability under § 24–10–118(2). A public employee may claim the immunity from liability provided by § 24–10–118(2)(a), C.R.S.2000, even if the claimant asserts that the claim arose from acts of the public employee that were beyond the scope of his or her employment.

Two divisions of this court have affirmed pretrial determination of scope of employment issues pursuant to C.R.C.P. 12(b)(1). *See Shandy v. Lunceford*, 886 P.2d 319 (Colo. App.1994); *Capra v. Tucker*, 857 P.2d 1346 (Colo.App.1993). However, subsequent to these cases the supreme court decided *Lakewood v. Brace*, 919 P.2d 231 (Colo.1996). In *Brace*, the supreme court distinguished the sovereign immunity of a governmental entity from the qualified immunity of a public employee.

■ Plaintiff contends that *Lakewood v. Brace, supra,* precludes the trial court's consideration of this issue under C.R.C.P. 12(b)(1). We do not read *Brace* so broadly. In *Brace,* the supreme court said the question to be determined was "whether, assuming there is a disputed issue of fact, an allegation that the employee's conduct was 'willful and wanton' must be determined before trial or at trial." *Lakewood v. Brace, supra,* 919 P.2d at 245. This clear framing of the question to be decided leads us to conclude that the supreme court in *Brace* held that the issue of the public employee's willful and wanton conduct must be deferred to trial, but it did not address the procedure for deciding other aspects of a public employee's assertion of § 24–10–118(2)(a) as a defense. *See Bresciani v. Haragan,* 968 P.2d 153 (Colo.App.1998) (holding that supreme court precedent, including *Lakewood v. Brace, supra,* did not preclude interlocutory appeal of the trial court's ruling, made pursuant to C.R.C.P. 12(b)(1), on jurisdictional notice issues under § 24–10–118(1)(a), C.R.S. 2000). We also conclude that the supreme court in *Brace* did not implicitly overrule or disapprove of *Shandy v. Lunceford, supra,* and *Capra v. Tucker, supra,* and, therefore, they are persuasive precedent.

Accordingly, we conclude that the trial court did not err in deciding the scope of employment issue pursuant to C.R.C.P. 12(b)(1).

Plaintiff also argues that the facts presented to the trial court supported an inference that Zakely was not acting within the scope of his employment, and that plaintiff must be given the benefit of that inference. We do not agree.

■ Under C.R.C.P. 12(b)(1), the trial court in a governmental immunity case is the fact-finder, and it must resolve factual disputes. *Seder v. Fort Collins,* 987 P.2d 904 (Colo.App.1999). As the fact-finder, the court is not required to give the non-moving party the benefit of conflicting inferences as would be required in resolving a summary judgment motion. *Trinity Broadcasting of Denver, Inc. v. Westminster, supra.*

Accordingly, because the trial court acts as fact-finder under C.R.C.P. 12(b)(1), we will

not reverse its determination on whether Zakely's conduct fell within the scope of his employment unless that determination is clearly erroneous and unsupported by the record. *See Trinity Broadcasting of Denver, Inc. v. Westminster, supra.*

Generally, in other contexts, this court has held that acts within the scope of employment include those that are necessarily incidental to the employment. The central inquiry in such circumstances is whether the employee is engaged in an activity that bears some relationship to the employer's business. *Pham v. OSP Consultants, Inc.,* 992 P.2d 657 (Colo.App.1999) (analyzing whether the imposition of respondeat superior liability is appropriate); *see also Capra v. Tucker, supra* (relying on cases involving workers' compensation law to determine whether a public employee's negligent operation of a motor vehicle occurred within scope of employment for purposes of the GIA); 1 *Larson's Workers' Compensation Law,* § 12.02 at 12–2 (1999) (discussing relationship between workers' compensation and respondeat superior cases).

■ Here, it is not disputed that Zakely was at his place of employment during normal work hours when he allegedly uttered the defamatory comment. According to Zakely, his comment was in response to a question posed by a co-worker regarding why plaintiff had taken a leave of absence. Zakely also asserted that the statement was made prior to the commencement of a staff meeting conducted by him. In contrast, plaintiff asserts that the statement was not made in the course and scope of employment because (1) there was no business purpose to the statement, (2) Zakely learned of the information he repeated in his statement outside of official channels, and (3) the statement was made prior to the official business of the meeting.

We note that the trial court specifically considered all of these factors in making its determination. Because that determination is supported by the record, we are unable to conclude, as a matter of law, that the court erred in finding that Zakely's comment was

made during the course and scope of employment.

The order is affirmed as to the trial court's dismissal of plaintiff's defamation claim against Zakely, it is reversed with regard to the trial court's failure to grant UNC's motion to dismiss to the extent it sought dismissal of any claims seeking damages that arose prior to the notice of claim limitations period, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Chief Judge HUME and Judge TAUBMAN concur.