Sean K. GALLAGHER, Petitioner,

v.

BOARD OF TRUSTEES FOR the UNI-
VERSITY OF NORTHERN COLORA-
DO, The University of Northern Colora-
do, and James Zakely, Respondents.

No. 00SC895.

Supreme Court of Colorado,
En Banc.

Sept. 16, 2002.

Welborn, Sullivan, Meck & Tooley, P.C., Kristen L. Mix, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Douglas J. Cox, Assistant Attorney General, Denver, Colorado, Attorneys for Respondents.

Roseman & Kazmierski, L.L.C., Barry D. Roseman, Thomas A. Feldman, Collison & Bechtold, LLC, Joan M. Bechtold, Denver, Colorado, Attorneys for Amicus Curiae Plaintiff Employment Lawyers Association.

Justice BENDER delivered the Opinion of the Court.

## Introduction

In this case we consider three issues construing the Colorado Governmental Immunity Act (CGIA) in the context of a whistleblower claim.

First, we consider whether the CGIA's 180–day notice of claim requirement bars the whistleblower-plaintiff from seeking relief for actions of the defendant-employer which occurred more than 180 days before the employee filed notice of the claim. Second, we consider whether the continuing violation doctrine developed under cases interpreting Title VII's filing requirements applies to a determination of whether the CGIA's 180–day notice of claim mandate has been followed. And third, we address whether our decision in *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996) permits a trial court to decide before trial whether a defendant public employee, who is sued personally in tort, enjoys immunity because his allegedly tortious acts occurred within the scope of his employment.[1] The plaintiff in this case, Sean Gallagher, filed suit under the Whistleblower Act against his former employer, the University of Northern Colorado (UNC), after he suffered a mental collapse following alleged retaliatory employment actions. He also sued a UNC administrator, James Zakely, individually, asserting that Zakely defamed Gallagher's·reputation with a comment at a staff meeting that Gallagher had reported to work "smelling like marijuana."

The court of appeals in *Gallagher v. Board of Trustees for the University of Northern Colorado*, 18 P.3d 837 (Colo.App.2000) held regarding the whistleblower claims that the alleged disciplinary actions which occurred more than 180 days before Gallagher filed a notice of claim were barred under the CGIA because Gallagher suffered injury immediately upon the occurrence of those earlier events. It also held that the continuing violation doctrine did not apply to whistleblower claims, and Gallagher could not rely on it to save his untimely notice of claim filing. Finally, it affirmed the trial court's dismissal of Gallagher's defamation claim, reasoning that *Brace* did not apply to the question of whether a public employee's actions occurred during the scope of employment, and thus, the trial court may determine this factual issue pre-trial. *Gallagher*, 18 P.3d at 842–44.

We reverse. We reaffirm our holding in *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993) that when a motion to dismiss for lack of subject matter jurisdiction for failure to comply with the notice of claim provision of the CGIA is based on a disputed factual interpretation of when the plaintiff discovered his injury, the trial court must hold a pre-trial hearing to resolve the fact questions and to determine whether the court properly maintains jurisdiction over the case. *Id.* at 927. We also reaffirm our holding in *Trinity Broadcasting* that the test for discovery of the injury for purposes of the CGIA is the time when the claimant discovered or should have discovered she was injured. *Id.* Discovery of the injury in this context only requires that the claimant realize there is some injury; the person need not have determined the cause of the injury. In a whistleblower case, the factual issue to be determined is when the employee knew or should have known that she was being retaliated against for some protected conduct.

We agree and affirm the court of appeals' holding that the continuing violation doctrine does not apply to determine whether Gallagher's whistleblower claims were timely filed pursuant to the CGIA's 180–day requirement.

With regard to Gallagher's defamation claim, we hold that the question of whether a public employee acts within the scope of his

---

1. We granted certiorari on the following issues: (1) "Whether the occurrence of each and every disciplinary action claimed under the Colorado Employee Protection Act (hereinafter "Whistleblower Act") is the functional equivalent of the date of 'discovery of the injury' under the Colorado Governmental Immunity Act, resulting in triggering the 180–day notice of claim provision; and (2)[w]hether application of this Court's decision in *City of Lakewood v. Brace* requires that, in determining the defense of qualified immunity of a public employee under the Colorado Governmental Immunity Act, a disputed allegation that the employee's conduct was outside the scope of his employment must be determined as a question of fact at trial."

employment is a question of sovereign immunity. As such, it is proper for a trial court to decide for the purposes of immunity whether an employee was acting within the scope of his employment on a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Here, although the trial court made a pre-trial ruling on this issue, it did not resolve disputed issues of fact.

Because there exist unresolved issues of fact on the CGIA notice issue and whether the alleged defamatory statement occurred during the scope of Zakely's employment, we remand this case to the court of appeals to return this case to the trial court for a pre-trial hearing to resolve these disputed issues. Based upon that court's resolutions of these factual issues, the trial court should then decide whether it has subject matter jurisdiction over Gallagher's whistleblower and defamation claims.

### Facts and Proceedings Below

Sean K. Gallagher was employed in the Information Systems Department of UNC from 1970 to 1997. During his employment at UNC, Gallagher always received positive work reviews and steadily advanced in seniority.

In 1993, Chris Ahern became Gallagher's supervisor. Soon thereafter, Gallagher alleges that he began noticing various improper financial dealings in the Information Systems Department. Gallagher reported his suspicions to his supervisors, beginning first with Ahern, his immediate supervisor, and then to increasingly senior officials at UNC until he eventually reported the activity to some of UNC's trustees.

Gallagher alleges that from 1994 through 1997, in retaliation for revealing the financial improprieties in the Information Systems Department, Ahern and other agents of UNC performed a pattern of disciplinary action against Gallagher that violated the Whistleblower Act. The alleged actions include ignoring Gallagher's communications, ridiculing him in public at staff meetings, excluding him from meetings that were perti-

nent to his work, reducing his responsibilities, threatening him with job loss, and Zakely's allegedly defamatory comment that Gallagher had reported to work smelling of marijuana. In his complaint, Gallagher acknowledges that between 1994 and 1997 he reported much of the retaliatory conduct as it occurred. However, Gallagher also asserts that the retaliatory action began so subtly that only in hindsight was he aware it constituted retaliatory conduct. Over time, the retaliation escalated, until 1997, when Gallagher suffered a mental collapse.

In March 1997, Gallagher took disability leave under the Family and Medical Leave Act and disability retirement in 1998. Gallagher was diagnosed with clinical depression and maintains that the depression was induced by work-related stress caused by the retaliation.

In July 1997, Gallagher filed a notice of claim pursuant to the CGIA and filed this civil suit soon thereafter.

UNC moved to dismiss much of Gallagher's whistleblower claim for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1). It argued that those alleged retaliatory acts which occurred more than 180 days from when Gallagher filed his notice of claim must be dismissed due to failure to comply with the CGIA.[2] Additionally it argued that the defamation claim against Zakely must be dismissed because he made the marijuana comment within the scope of his employment and is therefore immune under the CGIA. Gallagher argued in response that he did not discover his injury until he suffered a mental collapse and that the court should apply the continuing violation doctrine to find that Gallagher complied with the CGIA as to all events related to his whistleblower claim.

The trial court denied the motion to dismiss with regard to the whistleblower claim. Without making specific findings of fact and without directly addressing the continuing violation doctrine, the court held that it was inappropriate to distinguish between the var-

---

**2.** UNC does not argue that Gallagher's whistleblower claim must be dismissed in its entirety. It concedes that several of the alleged acts oc-

curred within 180 days of Gallagher's notice of claim and the court retains subject matter jurisdiction over those acts.

ious alleged acts and that it was "entirely possible for Plaintiff's emotional collapse to have manifest itself three years after the first instance of alleged harassment." The trial court granted the motion to dismiss with regard to Gallagher's defamation claim, holding that the facts as presented preclude a finding of defamation. The court explained that reasonable minds would agree that Zakely made the statement during the performance of his official duties and within the scope of his employment.

The court of appeals reversed in part and affirmed in part. As a preliminary matter, with regard to the whistleblower claim, it held that Gallagher could not invoke the continuing violation doctrine to transform his notice of claim to comply with the 180–day filing deadline for those acts occurring more than 180 days prior to his filing. *Gallagher*, 18 P.3d at 842. Because Gallagher asserted that his emotional collapse was the cumulative effect of the actions he alleged occurred between 1994 and 1997, the court reasoned that Gallagher suffered injury much earlier than his final emotional collapse. Thus, the court of appeals reasoned, Gallagher was required under the CGIA to file his notice of claim once he suffered some injury and knew the cause of it. Therefore, it held that the trial court erred in not dismissing the portion of the whistleblower claim that was based on events occurring more than 180 days before Gallagher filed his notice of claim. *Id.*

On appeal of the defamation claim, Gallagher argued that the trial court's dismissal of the claim was improper because the issue of whether Zakely's actions occurred during the scope of his employment is a question of fact that may only be raised at trial and is not decided pursuant to 12(b)(1) motions.

The court of appeals reasoned that in *Brace*, this court held that a determination under the CGIA of whether a public employee's actions were willful and wanton must be

reserved for trial. Gallagher did not allege that Zakely's comment was willful and wanton. He only alleged that Zakely was acting beyond the scope of his employment. Therefore, the court reasoned that *Brace* was inapposite and the trial court did not err in deciding the scope of employment issue pursuant to C.R.C.P. 12(b)(1). The court of appeals also held that the record supported the trial court's finding that Zakely's comments occurred within the scope of his employment. *Gallagher*, 18 P.3d at 843.

## Analysis

We consider this case pursuant to a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction pursuant to the CGIA. Two immunity issues are presented by this case and we will consider them each in turn. First, we consider whether Gallagher satisfied the CGIA 180–day time limit to file a notice of claim for his whistleblower claim. Second, we consider if the fact question of whether defendant Zakely's alleged defamatory comments occurred during the scope of his employment may be decided prior to trial on a C.R.C.P. 12(b)(1) motion or whether the question must be deferred for trial.

### Timely Notice of Claim Pursuant to the CGIA

The Whistleblower Act[3] prohibits an employer from taking disciplinary action[4] against an employee for the disclosure of information. § 24–50.5–103(1), 7 C.R.S. (2002). A state employee making a whistleblower claim must comply with the CGIA 180–day time period for filing a notice of claim as set forth in section 24–10–109(1), 7 C.R.S. (2002). *State Pers. Bd. v. Lloyd*, 752 P.2d 559, 565 (Colo.1988).

■ The CGIA requires that anyone who has a claim against a state employee must

---

**3.** Section 24–50.5–103, 7 C.R.S. (2002) provides in pertinent part: "no appointing authority or supervisor shall initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information."

**4.** Section 24–50.5–102(1), 7 C.R.S. (2002) defines disciplinary action as "any direct or indirect form of discipline or penalty, including, but not limited to, dismissal, demotion, transfer, reassignment, suspension, corrective action, reprimand, admonishment, unsatisfactory or below standard performance evaluation, reduction in force, or withholding of work, or the threat of any such discipline or penalty."

file a written notice of the claim "within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." § 24–10–109(1). Complying with the notice of claim is a jurisdictional prerequisite to suit. *Id.; see also Mesa County Valley Sch. Dist. v. Kelsey*, 8 P.3d 1200, 1204 (Colo. 2000); *Walton v. State*, 968 P.2d 636, 643 (Colo.1998). The relevant question, then, is when does an injured plaintiff discover her injury such that she may comply with the statute?

As background for determining when a state employee discovers her injury for purposes of the CGIA, we discuss *Trinity Broadcasting* because its holding applies here and its facts are analogous to a determination of whether Gallagher filed a timely CGIA notice. Trinity built its broadcasting center approximately 100 yards downhill from two water storage tanks owned by the City of Westminster. *Trinity Broad.*, 848 P.2d at 918–19. About a year later, Trinity employees noticed cracks in the building's walls and floors. Trinity hired an engineer who theorized that the cracks were caused by compressing soil. He made some structural repairs which briefly halted the cracking process. With the continued appearance of cracks, Trinity hired a soil engineer who opined that the cracks were caused by moisture in the soil, which emanated from the uphill water tanks and caused the soil to become claylike. Trinity then mailed a CGIA notice of claim for the damage to Westminster. *Id.* at 919.

Westminster argued that Trinity "discovered" the injury when it first noticed cracks in the walls and the floors. To the contrary, Trinity argued that it had notice much later when the engineer found free water in the soil under and around their building and suggested that the water tanks were the source of the cracks. *Id.* at 923.

In order to construe the meaning of "discovery of the injury" for purposes of the CGIA and to resolve this question, we observed that tort concepts are helpful in determining when an injury is discovered. We noted that the relevant legislative history revealed that the General Assembly intended to incorporate the discovery rule of tort law into the CGIA. *Id.*

 In torts, the "discovery of the injury" rule is that a statute of limitations does not begin to run until the plaintiff knew or should have known through the exercise of reasonable diligence that she had been injured by a wrongful act. *Id.* However, the concept of accrual of a tort encompasses the idea that the plaintiff must not only discover the injury but also the cause of the injury. *Id.* For purposes of the CGIA, we said the "notice period is triggered when a claimant has *only discovered* that he or she has been wrongfully injured." *Id.* (emphasis added). Specifically in *Trinity Broadcasting* we held that the notice period was triggered when "Trinity knew or should have known that the structural damage to the building resulted from an abnormal amount of water in [the] ground soil." *Id.* at 927.

Additionally, we said that for purposes of the CGIA, the plaintiff need not yet know the cause of the injury nor must all elements of the claim have ripened before she must file her notice of claim. *Id.* We noted further that the plaintiff's 180–day time limit may expire if she waits to discover the cause of her injury before filing pursuant to the CGIA. *Id.* at 928.

 In addition to holding that the CGIA notice period is triggered upon discovery of the injury, *Trinity Broadcasting* stands for the proposition that the trial court is the pre-trial fact-finder to determine whether notice was timely filed—that is, when the injury was discovered by the claimant. *Id.* at 924. When there is a factual dispute concerning when the plaintiff discovered her injury, an evidentiary hearing is necessary to resolve the dispute. The trial court may also permit limited discovery to decide the notice issue. *Id.* The plaintiff has the burden of proving jurisdiction and the trial court will not construe inferences in favor of the plaintiff. *Id.* at 925.

In this case, the trial court decided pursuant to C.R.C.P. 12(b)(1) that it retained subject matter jurisdiction over Gallagher's whistleblower claims. Both UNC's motion

and Gallagher's response were accompanied by many pages of exhibits including affidavits and excerpts of deposition testimony. Both parties extensively argued to the trial court and on appeal that the facts weigh in favor of its interpretation of the facts. The trial court's order recited the brief factual background of the case and summarily concluded only that "it is entirely possible" that Gallagher discovered his injury once he suffered the mental collapse and not earlier. The court held neither an evidentiary hearing nor made fact findings to resolve the factual disputes. It is apparent in the briefs to this court that the facts remain highly disputed.

[8] Hence, we reaffirm our holdings in *Trinity Broadcasting* that the CGIA notice period is triggered upon discovery of the injury and that when there are disputed issues of fact regarding when an injury is discovered, the trial court is the pre-trial fact-finder and must hold an evidentiary hearing to resolve those issues. Given the factual dispute in this case regarding when Gallagher discovered or should have discovered through reasonable diligence that he was wrongfully injured, we reverse the holding of the court of appeals with directions to remand to the trial court for an evidentiary hearing to determine when Gallagher discovered or should have discovered his injury and if Gallagher, in fact, complied with the CGIA 180–day notice of claim provision. The precise question that must be determined by the trial court is when Gallagher knew or should have known that he was being retaliated against for his protected conduct.

### The Continuing Violation Doctrine Cannot be Applied to Claims Brought Under the CGIA Notice of Claim

■ To aid the trial court on remand, we turn now to the question of whether the continuing violation doctrine applies to the factual determination of when Gallagher knew or should have known that he was being retaliated against for his protected conduct. As amicus curiae, the Plaintiff Employment Lawyers Association argues that this court should apply the continuing violation doctrine to whistleblower claims. On certiorari to this court, Gallagher did not raise the continuing violation doctrine. UNC argues that we may not consider an issue that is only raised in an amicus brief and not by the parties. Although UNC correctly states the law, this rule does not apply in this case. As explained correctly by Gallagher, the continuing violation doctrine is not a separate issue to be decided in this case. Instead, the doctrine is one method of analyzing the issue of whether Gallagher complied with the CGIA 180–day time limit. Furthermore, Gallagher raised the continuing violation doctrine to the trial court and it was considered extensively by the court of appeals. Because we agree with the court of appeals' holding but disagree with its reasoning regarding the continuing violation doctrine, we find it necessary to address the application of the doctrine to this case.

We begin by articulating that, despite the parties' arguments, the question is not whether the continuing violation doctrine applies to whistleblower claims but whether it may be applied to extend the 180–day time limit for filing a notice of claim under the CGIA. The Whistleblower Act contains a 30–day filing deadline that is separate from that found in the CGIA. § 24–50.5–104(1), 7 C.R.S. (2002). Whether Gallagher complied with the 30 day filing deadline of the Whistleblower Act is not before this court, and we express no opinion on this issue.

The continuing violation doctrine was developed by the federal courts in response to the time limit imposed by Title VII of the federal Civil Rights Act for filing a claim for discrimination with the Equal Employment Opportunity Commission. *See Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368, 376 (1986) (discussing the history of the continuing violation doctrine and applying it to state law). The federal courts began using the doctrine in the 1960s as an equitable method of avoiding dismissing discrimination cases for failure to comply with Title VII's filing deadline. *Id.* at 377.

Over the years, the United States Supreme Court has increasingly clarified when the doctrine may be used to avoid Title VII's filing deadline. The Supreme Court most recently narrowed the doctrine in *National Railroad Passenger Corp. v. Morgan*, ——

U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In that racial discrimination case, the Court determined that a plaintiff may invoke the continuing violation doctrine under Title VII only for hostile work environment claims. Gallagher asserts that a hostile work environment claim is analogous to his claim and that *Morgan* supports his argument that this court should recognize the continuing violation doctrine.

Although *Morgan* is factually and procedurally different from the case at hand, the Supreme Court's discussion of the continuing violation doctrine is useful to our analysis. The Court explicitly avoided ruling on the type of situation presented by Gallagher's case in which there is a factual dispute regarding when the plaintiff discovered his injury. The Court explained that Morgan knew he was being discriminated against at the time each of the discriminatory acts occurred against him. Therefore, the Court noted, "One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered. But this case presents no occasion to resolve that issue." *Nat'l R.R. Passenger Corp.,* —— U.S. at —— n. 7, 122 S.Ct. 2061.

Additionally, the Court reiterated its holding of *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) that the filing period found in Title VII is "not a jurisdictional prerequisite to filing a Title VII suit." *Nat'l R.R. Passenger Corp.,* —— U.S. at ——, 122 S.Ct. 2061; *see also Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1195 (Colo.1996) (discussing procedure for processing Title VII claims and lawsuits and brought under the CGIA). The Title VII time limit is "subject to waiver, estoppel, and equitable tolling 'when equity so requires.' " *Nat'l R.R. Passenger Corp.,* at ——, 122 S.Ct. 2061 (citing *Zipes,* 455 U.S. at 398, 102 S.Ct. 1127).

In contrast to Title VII, the CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA. *East Lakewood Sanitation Dist. v. Dist. Court,* 842 P.2d 233, 235 (Colo. 1992). In *East Lakewood Sanitation District,* we held that the word "shall" in section 24–10–109(1) demonstrates that the legislature intended the 180–day time limit to be strictly applied by the courts. *Id.* at 236.

█ Furthermore, section 24–10–109(1) is a non-claim statute, meaning that failure to comply with the 180–day period is an absolute bar to suit. *Trinity Broad.,* 848 P.2d at 923; *Kelsey,* 8 P.3d at 1206. As we explained in *Kelsey,* non-claim statutes and the issue of subject matter jurisdiction are not subject to equitable defenses such as waiver, tolling, or estoppel. *Id.*

█ Comparison of the nature of the Title VII filing deadline to that of the CGIA 180–day notice of claim provision convinces us that the judicially-constructed continuing violation doctrine cannot be used to remedy an untimely filing under the CGIA. In this case, the district court must resolve the discovery of the injury fact issue to determine when Gallagher discovered his injury for purposes of the CGIA's 180–day time limit, without the benefit of the continuing violation doctrine. If the court finds that acts claimed by Gallagher as retaliatory conduct occurred outside the 180–day limit, those acts will therefore be barred from his whistleblower claim.

Gallagher additionally points to the court of appeals' case of *Patel v. Thomas,* 793 P.2d 632 (Colo.App.1990) to support his argument that the continuing violation doctrine should be invoked by this court. In *Patel,* the court of appeals applied the continuing violation doctrine to hold that a plaintiff's sexual harassment claims were not barred for failure to comply with the CGIA 180–day notice of claim deadline. We do not find the reasoning of *Patel* convincing and to the extent it is inconsistent with today's holding, we overrule it.

### Whether a State Employee Acted Within the Scope of His Employment is Properly Resolved on a C.R.C.P. 12(b)(1) Motion

Gallagher argues that the trial court improperly decided the factual issue of whether Zakely made the allegedly defamatory comments during the scope of his employment on

a C.R.C.P. 12(b)(1) motion to dismiss instead of waiting to resolve the issue at trial.

Under the CGIA, a state employee who commits an act or omission while performing within the scope of his employment is immune from liability that sounds in tort or that could sound in tort unless the tort is one of six exceptions enumerated in section 24–10–106, 7 C.R.S. (2002)[5] or unless the state employee's actions were willful and wanton. § 24–10–118, 7 C.R.S. (2002). Gallagher argues that our decision in *Brace* mandates that, like the question of whether the defendant's acts were willful and wanton, whether the acts occurred within the scope of employment is a question of qualified immunity that must be resolved at trial.

In *Brace*, we distinguished between qualified and sovereign immunity. *Brace*, 919 P.2d at 245–46. For state law claims under the CGIA, when a public employee enjoys qualified immunity, the immunity is only a defense to liability and does not bar suit entirely.[6] *Id.* In contrast, sovereign immunity is a jurisdictional question, an absolute bar to suit, and prevents the court from maintaining subject matter jurisdiction over the suit. *Id.; see also* § 24–10–118.

In *Brace*, we held that when a plaintiff asserts that the defendant public employee's actions were willful and wanton, the issue is one of qualified immunity. *Id.* at 246. Therefore, because qualified immunity is not a bar to suit, the trial court may not decide the issue on a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as it may with a question of sovereign immunity.

After the operative facts of *Brace* occurred and before we reached our ultimate decision, the legislature amended the CGIA statute to require that a plaintiff must plead with a specific factual basis that a public employee acted willfully and wantonly, and the failure to so plead shall result dismissal for failure to state a claim upon which relief can be granted.[7] Sections 24–10–110(5)(a) and (b) provide:

> (5)(a) In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint.

> (b) Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted.

Colorado Governmental Immunity Act, ch. 172, Colo. Sess. Laws (1992) (codified as amended at § 24–10–110(5)(a) and (b), 7 C.R.S. (2002)).

At the same time, the general assembly provided that if a public employee raises the issue of sovereign immunity, then the court shall permit discovery on this issue only, and the court's decision on this issue shall be a final judgment subject to interlocutory appeal:

> (2.5) If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion. The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.

Colorado Governmental Immunity Act, ch. 172, Colo. Sess. Laws (1992) (codified as amended at § 24–10–118(2.5), 7 C.R.S. (2002)).

---

**5.** The excepted torts for which a public employee or entity has waived liability generally relate to the government's use of highways and maintenance of dangerous conditions of highways, road signs, hospitals, or dangerously restricting public access to public areas. § 24–10–106, 7 C.R.S. (2002).

**6.** In *Brace*, we explained that qualified immunity for federal law claims is subject to a different definition and standards. We do not here address a state employee's immunity from federal law claims in any way. *Brace*, 919 P.2d at 238. *See also Furlong v. Gardner*, 956 P.2d 545, 551 (Colo.1998).

**7.** The facts under *City of Lakewood v. Brace* arose in 1991. The general assembly added subsections 24–10–110(5)(a) and (b) in 1992. Additionally, the failure to state a claim is a C.R.C.P. 12(b)(5) motion, not a C.R.C.P. 12(b)(1) motion.

When these two changes are considered together, we conclude as follows. First, the legislature foreshadowed our holding in *Brace* that an allegation of willful and wanton conduct does not raise a jurisdictional matter under C.R.C.P. 12(b)(1), but rather a claim to be determined at trial and not pre-trial, assuming sufficiency of the pleadings.

Second, if a public employee asserts the defense of sovereign immunity, then this question shall be treated pre-trial and its resolution subject to interlocutory appeal. The procedure for determining whether a public employee may assert sovereign immunity is entirely different from that set forth for the determination of whether the employee acted willfully and wantonly. Clearly, for an employee to claim sovereign immunity and the benefit of this pretrial procedure, she must be acting within the scope of her employment.

The legislature's directive to treat the determination of a public employee's sovereign immunity as a pre-trial matter is consistent with the policy behind the CGIA that led us to conclude that "our legislature views governmental immunity as necessary for good government." *Medina v. State*, 35 P.3d 443, 453 (Colo.2001). Governmental immunity is also necessary to "protect the public against unlimited liability and excessive fiscal burdens." *Walton*, 968 P.2d at 643. *See also* section 24–10–102, 7 C.R.S. (2001) ("the state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions."). Such a required pre-trial decision permits the court to decide early whether the case is a dispute between private parties or one which involves the government. In this way, in some cases, the government is spared unneeded litigation expense.

 The above analysis indicates that, contrary to Gallagher's assertion, the factual inquiries of whether an employee acted willfully and wantonly and whether the employee acted within the scope of employment are not analogous. Because whether the employee acted within the scope of his employment is a basic prerequisite for immunity, we are persuaded that the question is jurisdictional and is one of sovereign, not qualified, immunity. Therefore, we hold that it is procedurally proper for a trial court to decide the question of scope of employment on a C.R.C.P. 12(b)(1) motion to dismiss.

 When the C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction regarding scope of employment is raised before the trial court, the same considerations discussed above regarding Gallagher's timeliness in filing his notice of claim apply to this question as well. The trial court is the finder of fact on the question of sovereign immunity. Therefore, the court should hold an evidentiary hearing and may permit limited discovery to resolve any disputed issues of fact.

Here, Gallagher sued Zakely individually, not in his public capacity, for the tort of defamation. Zakely argues that he was acting within the scope of his employment at the time he made the allegedly defamatory comment. Defamation is a state claim that is not one of the six enumerated exceptions to tort immunity set forth in the CGIA. Gallagher did not allege that Zakely was acting willfully and wantonly when he made the allegedly defamatory comments. Therefore, if Zakely was acting within the scope of his employment, he would be immune under the CGIA, and the defamation claim against him would be barred. Given the above statutory interpretation and policy discussion, we hold that the trial court properly decided this issue pretrial pursuant to Zakely's C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

However, as with the arguments regarding Gallagher's whistleblower claims, there remain disputed issues of fact. The parties' briefs to this court extensively argue the facts surrounding Zakely's comment. Furthermore, the trial court's order is unclear as to how it decided that Zakely was acting within the scope of his employment at the time he made the allegedly defamatory comment.

Hence, we reverse the judgment of the court of appeals and remand this case to that court with directions to return the case to the

trial court for an evidentiary hearing to determine whether Zakely was acting within the scope of his employment when he made the allegedly defamatory comments.

### Conclusion

For the reasons discussed, we reverse the judgment of the court of appeals and remand this case to that court with directions to return this case to the trial court for a hearing to determine when the plaintiff discover-ed his injury for the purposes of the CGIA and whether defendant Zakely was acting within the scope of his employment when he made the allegedly defamatory comments.