Elaine B. VISSER, by and through her court-appointed conservator, Janice EDER, Plaintiff–Appellee,

v.

Bryan MAHAN, D.O., and James D. Albert, M.D., Defendants–Appellants.

No. 04CA1361.

Colorado Court of Appeals, Division V.

March 24, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2004.

Peter A. Goldstein, P.C., Peter A. Goldstein, Leventhal Brown and Puga, P.C., Jim Leventhal, Timms R. Fowler, James E. Puga, Denver, Colorado, for Plaintiff–Appellee.

Kennedy Christopher Childs and Fogg, P.C., John R. Mann, Terry Cipoletti, Denver, Colorado, for Defendant–Appellant Bryan Mahan, D.O.

Pryor Johnson Montoya Carney & Karr, P.C., David D. Karr, Elizabeth C. Moran, Denver, Colorado, for Defendant–Appellant James D. Albert, M.D.

Opinion by: Chief Judge DAVIDSON.

In this medical malpractice action, defendants, Bryan Mahan, D.O., and James D. Albert, M.D., appeal from the trial court's order denying their motions seeking, on governmental immunity grounds, dismissal of the complaint brought by plaintiff, Elaine B. Visser, by and through her court-appointed conservator, Janice Eder. We affirm.

On April 17, 2002, plaintiff underwent cardiothoracic surgery at Memorial Hospital in Colorado Springs. The hospital is owned and operated by the City of Colorado Springs, and defendants are doctors employed by the hospital. Mahan was the operating surgeon, and Albert assisted on the

operation. Plaintiff failed to awaken from the operation and suffered severe, permanent brain damage.

On September 11, 2002, within 180 days of the surgery, counsel hired by plaintiff's husband gave notice to the City of a potential tort claim pursuant to the notice of claim provisions of the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2004. The notice stated, inter alia, that the incident involved a surgical procedure on plaintiff and that "[a]s a result of inadequate perfusion, [plaintiff] went on to suffer a stroke and catastrophic brain injury." The notice further stated that "[t]he involvement of the surgeon and the anesthesiologist is not yet confirmed."

In November 2002, the El Paso County Department of Human Services filed a petition with the probate court seeking appointment of a guardian for plaintiff as a result of her alleged incapacity. The Department subsequently moved to dismiss the petition based on a request from plaintiff's husband.

On February 10, 2003, the probate court appointed a guardian ad litem for plaintiff. The guardian ad litem subsequently obtained permission from the probate court to enter a contingency fee relationship with a law firm on plaintiff's behalf.

Shortly thereafter, on April 9, 2003, plaintiff, by and through her husband, filed suit against defendants, other health care providers, and Memorial Hospital. Plaintiff then filed an amended notice of claim on April 24, 2003, that listed claims against both Mahan and Albert.

On May 20, 2003, the probate court entered an order appointing plaintiff's husband as special conservator to initiate and prosecute legal actions on plaintiff's behalf.

On July 17, 2003, following a hearing and determination that plaintiff was incapacitated within the meaning of § 15–14–102(5), C.R.S. 2004, the probate court appointed plaintiff's husband as the unlimited conservator and unlimited guardian of plaintiff. Plaintiff's husband was subsequently discharged as conservator in February 2004, and the current conservator was appointed.

Defendants filed a joint motion to dismiss plaintiff's claims against them on the basis that she had failed to provide them with a timely and proper notice of claim. The trial court found that the April 24, 2003, notice of claim was timely because it was given within 180 days of the probate court's appointment of a guardian for plaintiff on February 10, 2003. Consequently, it denied defendants' motion. Defendants then brought this interlocutory appeal pursuant to § 24–10–118(2.5), C.R.S.2004.

I.

 Under the GIA, an injured person seeking damages from a public entity or employee must provide written notice of the claim within 180 days of discovery of the injury. Sections 24–10–109(1), 24–10–118(1)(a), C.R.S.2004. The failure to comply with the 180-day period is an absolute bar to suit. *Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200 (Colo.2000). Because § 24–10–109(1) is a nonclaim statute, it is not subject to equitable defenses such as waiver, tolling, or estoppel. *Gallagher v. Bd. of Trs.,* 54 P.3d 386 (Colo.2002).

 The 180-day period is triggered when a claimant has discovered that he or she has been wrongfully injured. *See Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993); *Grossman v. City & County of Denver,* 878 P.2d 125 (Colo.App. 1994) (claim discovered when claimant knew or should have known that the injuries were caused by the tortious act of another).

 Thus, when a claimant is rendered unconscious by allegedly tortious conduct, the 180-day notice period does not begin to run until the claimant actually discovers, or should have discovered, the injury. *See Bryant v. City of Lafayette,* 946 P.2d 499, 501 (Colo.App.1997) (180-day period did not begin until claimant discovered, eleven days after the accident, that he had been injured).

 Similarly, the 180-day period does not begin to run as to a minor child who is incapable of appreciating his or her injury. Nor is a minor child, in such circumstances, charged with the parents' knowledge of the injury. *See Cintron v. City of Colorado*

*Springs*, 886 P.2d 291, 295 (Colo.App.1994) ("There is ... no basis for asserting that a minor must be charged with the parents' failure reasonably to discover the minor's injury or to provide notice thereof on the child's behalf."); *see also Rojhani v. Arenson*, 929 P.2d 23, 26 (Colo.App.1996).

## II.

■ It is undisputed that in 1998, before plaintiff and her husband were married, plaintiff executed a nondurable power of attorney in favor of her husband. It is also undisputed that an attorney retained by the husband to act on plaintiff's behalf filed a notice of claim concerning other defendants on September 11, 2002. Based on these facts, defendants contend that even if plaintiff was incapacitated at the time of her surgery, knowledge of her April 17, 2002 injuries was imputed to her, which, in turn, made the April 24, 2003 notice untimely. We disagree.

■ When a plaintiff is disabled, the 180–day notice period of the GIA begins to run when an individual, with knowledge of the injury that may be imputed to the plaintiff, is appointed to act on the incapacitated claimant's behalf. *Antonopoulos v. Town of Telluride*, 187 Colo. 392, 399, 532 P.2d 346, 350 (1975) ("[t]he running of the period of limitations against a person under a disability is controlled by the appointment of a 'legal representative'"); *Rojhani v. Arenson, supra*, 929 P.2d at 26 (where child is not capable of appreciating his injury, 180–day period begins to run when guardian or personal representative is appointed on his or her behalf); *Cintron v. City of Colorado Springs, supra*, 886 P.2d at 294 (180–day period does not begin to run until appointment of personal representative); *Brown v. Teitelbaum*, 830 P.2d 1081, 1083–84 (Colo.App.1991) (minor's notice untimely where filed more than 180 days after appointment of a legal representative).

Such an individual must have the duty to protect the interests of the disabled plaintiff, such as a court-appointed legal representative, guardian, or conservator or an agent designated under a power of attorney. *See* § 15–14–102(6), C.R.S.2004 (defining "legal representative" for purposes of Colorado Uniform Guardianship and Protective Proceedings Act); *see also In re Trust of Franzen*, 955 P.2d 1018 (Colo.1998) (generally, a power of attorney enables an agent to perform certain acts on the principal's behalf).

Here, however, no legal representative was appointed for plaintiff until, at the earliest, February 10, 2003. Furthermore, there was no agency relationship between plaintiff and her husband or the attorney hired by him to represent her.

Specifically, plaintiff's husband, in the capacity of next friend, had no legal duty to act on plaintiff's behalf. *See* C.R.C.P. 17(c); *see also, e.g., Fox v. Crawford*, 80 N.E.2d 187 (Ohio Ct.App.1947) (agency is not inherent in the marital relationship). Similarly, until the husband was appointed as the special conservator in May 2003, the purported authority of counsel hired by the husband to pursue plaintiff's claims derived not from plaintiff, but only from her husband's status as next friend. *See Rojhani v. Arenson, supra*, 929 P.2d at 26 (rejecting contention that "plaintiffs' counsel's ... knowledge of the child's injuries may be imputed to the child"); *see also Antonopoulos v. Town of Telluride, supra*, 187 Colo. at 399, 532 P.2d at 350 ("a minor's next friend is not a real party in interest, but rather a mere aid to the minor's assertion of his rights against the defendants" and, as a result, "the next friend's action or inaction in commencing the suit cannot prejudice the minor's rights").

Moreover, although the 1998 power of attorney granted plaintiff's future husband numerous broad powers to manage her affairs, it did not provide that it would survive plaintiff's disability. The disability of a principal who has previously executed a power of attorney that is not a durable power, such as here, constitutes a revocation or termination of the agency as to the attorney in fact (unless the attorney in fact, in good faith, acts without actual knowledge of the disability or incapacity of the principal). *See* § 15–14–502, C.R.S.2004; *see also* § 15–14–501, C.R.S.2004 (setting forth when power of attorney is not affected by disability); § 15–14–604, C.R.S.2004 (power of attorney does

not terminate if instrument contains language specified in § 15–14–501(1), C.R.S. 2004, or otherwise specifies that authority may be exercised notwithstanding principal's disability).

We do not agree with defendants' argument that, for purposes of determining the status of the husband's nondurable power of attorney under the Probate Code, plaintiff was not "disabled" until she was adjudicated an incapacitated person on July 17, 2003. If a formal adjudication of incapacity were required, the statutory provisions validating good faith actions of an attorney in fact acting under a nondurable power of attorney without actual knowledge of the principal's disability would be meaningless. *See* § 15–14–502.

More important, in the Probate Code, "disability" is defined as "*cause* for a protective order." Section 15–10–201(14), C.R.S.2004 (emphasis added); *see also* § 15–14–102(11), C.R.S.2004 (defining "protected person" as an individual for whom a conservator has been appointed or other protective order has been made). *Compare In re Estate of Gallavan,* 89 P.3d 521 (Colo.App.2004) (appointment of conservator has no effect on testamentary capacity of protected person), *with James v. Brookhart Lumber Co.,* 727 P.2d 1119 (Colo.App.1986) (adjudication of "legal disability" required to toll workers' compensation statute of limitations).

Here, it was undisputed that plaintiff's permanent brain injury resulting from her operation on April 17, 2002 triggered the need for a protective order. Moreover, it was also undisputed that the husband had actual knowledge of plaintiff's condition following the surgery. Thus, the husband's nondurable power of attorney automatically terminated as of that date.

Accordingly, on this record, we agree with the trial court that knowledge of plaintiff's injuries was not imputed to her until the appointment of her legal representative and that the 180–day notice period did not commence until that time. *See Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253 (Colo.2003); *Dicke v. Mabin,* 101 P.3d 1126 (Colo.App.2004) (whether a claimant has satisfied the requirements of § 24–10–109(1) is a question that must be resolved by the trial court before trial).

Although defendants contend otherwise, whether the 180–day period was triggered by the appointment of the guardian ad litem on February 10, 2003, or of the husband as special conservator on May 29, 2003, is inconsequential. The April 24, 2003 notice of claim naming defendants was filed within 180 days of both. *See Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187 (Colo.1996) (claim not barred by premature filing of notice).

### III.

Defendants also argue that, because the probate court did not adjudicate plaintiff as incapacitated until July 17, 2003, after the 180–day period had expired, she may not claim that she was incapable of appreciating her injuries for purposes of the 180–day rule. Again, we disagree.

No formal adjudication of incapacity is needed for a trial court to find that the 180–day period had not commenced as a result of a disability. *See Bryant v. City of Lafayette, supra,* 946 P.2d at 501; *Rojhani v. Arenson, supra,* 929 P.2d at 26; *Cintron v. City of Colorado Springs, supra,* 886 P.2d at 295. *In re Estate of Gallavan, supra,* and *James v. Brookhart Lumber Co., supra,* relied on by defendants, do not concern the running of the 180–day time period under the GIA and do not hold to the contrary.

As discussed, plaintiff suffered a permanent brain injury as a result of the operation and was severely impaired. Thus, there was ample basis for the trial court's conclusion that plaintiff could not know, or reasonably be expected to know, of her injuries. *See Bryant v. City of Lafayette, supra,* 946 P.2d at 501.

In view of our disposition, we need not address defendants' other contentions.

The order is affirmed.

Judge NIETO and Judge HAWTHORNE concur.