JoEllyn JONES

v.

CITY OF PHILADELPHIA, et al.

No. Civ.A. 00-5569.

United States District Court,
E.D. Pennsylvania.

Jan. 9, 2001.

Bruce G. Cassidy, Bruce G. Cassidy & Assoc., Philadelphia, PA, for plaintiff.

Robin B. Arnold, Deputy City Solicitor, Philadelphia, PA, for defendants.

## MEMORANDUM

BARTLE, District Judge.

This is a civil rights action under 42 U.S.C. § 1983 against the City of Philadelphia, the present and a former police commissioner, and two Philadelphia police offi-

cers. Plaintiff is proceeding under the state-created danger theory. There are also supplemental state law claims.

Before the court is the motion of defendants to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[1] For purposes of this motion, all well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the non-movant. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). We will dismiss a complaint only when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See id.* at 73, 104 S.Ct. 2229.

Plaintiff JoEllyn Jones was a passenger in a motor vehicle which was being driven in the nine hundred block of Washington Avenue in Philadelphia at approximately 12:56 a.m. on July 12, 1998. It was during the so-called "Greek Week" or "Greek Picnic," an annual event in which fraternities and sororities gather in Philadelphia for partying and revelry. Plaintiff alleges that a number of male individuals pulled her from the car, tore off her clothes, sexually assaulted her, and stole her money.

According to the complaint, defendant police officers Marjorie Giddings and Donald West, who were assigned to traffic and crowd control in the area, observed the assault but failed or refused to come to plaintiff's aid. They failed or refused to attempt to stop the assault or to arrest the perpetrators even though plaintiff pointed them out. After the incident, the officers purportedly "berated" plaintiff and simply retrieved the pocketbook of another passenger in the car whose pocketbook had been stolen by one of the perpetrators.

Plaintiff made a formal complaint about the incident to the Philadelphia Police Department. She claims that the Department failed to complete the investigation within the required 75 days and to identify other officers involved.

Plaintiff also alleges that it is the custom and practice of the City of Philadelphia and its police department to observe illegal conduct during the Greek Picnic and "to allow said conduct to occur without appropriate police reaction, including but not limited to arrest of those persons performing illegal activities and the prevention of harm to innocent civilians." Compl. ¶ 16.

The question presented is whether plaintiff has stated a claim for relief under the state-created danger theory of § 1983. Plaintiff has sued defendants for violation of her right to substantive due process under the Fourteenth Amendment. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S. § 1983. While § 1983 does not create any substantive rights, it does provide a remedy for deprivation of rights secured by the Constitution and laws of the United States when such deprivations are committed by persons acting under color of state law. *See Morse v. Lower*

---

**1.** Defendants have now withdrawn the issue of the statute of limitations, which was initially presented as a part of their motion to dismiss.

*Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir.1997).

Our analysis begins with the seminal case of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There, young Joshua DeShaney, a four year old boy, had been physically abused by his father over a prolonged period of time. While the Winnebago County Department of Social Services ("DSS") had long been involved with the father, who had entered into a voluntary agreement to cooperate with DSS, and while DSS had good reason to suspect child abuse, it allowed the boy to remain with his father. Finally, the father beat Joshua so severely that he was in a coma for a time. Emergency brain surgery was required. As a result of the beating, the boy remained severely retarded and was expected to be institutionalized for the rest of his days. The father was ultimately convicted of child abuse.

The boy's mother and guardian sued DSS under § 1983, alleging a deprivation of the boy's liberty without substantive due process for failing to intervene to protect him from his father's abuse about which it knew or should have known. While expressing great sympathy for Joshua's plight, the Supreme Court held that no cause of action existed. The Court did recognize that where special relationships are created or assumed by the state, certain constitutional rights may be implicated, and the state has an affirmative obligation to provide protective services. For example, such duties arise where a person is a prisoner or has been involuntarily committed to a mental facility. Other than limited circumstances of this nature where someone can be said to be in state custody, the Court explained that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. 998. The Court added, "its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* Simply knowing about a person's unfortunate or dire situation does not invoke any obligation on the part of the state to aid him or her. The Court made it clear that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. 998. Since no special relationship existed between Joshua and the State, it had no constitutional duty to protect him.

The state-created danger theory emanates from the following sentence in *DeShaney:* "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201, 109 S.Ct. 998. Thus, if state actors played a role in the creation of the danger, they may face liability under § 1983.

Since *DeShaney*, our Court of Appeals has faced the issue before us on several occasions. In *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir.1992), two female public high school students were allegedly molested by fellow students over a period of time in the unisex bathroom and the darkroom of the graphic arts classroom. They sued the school district among others. The Court of Appeals upheld the dismissal of the complaint on the ground that neither a special relationship nor a state-created danger existed even though school attendance in Pennsylvania is compulsory. The

court explained that "the school defendants did not create plaintiffs' peril, increase their risk of harm, or act to render them more vulnerable to the student defendants' assaults." *Id.* at 1374.[2]

The next relevant Court of Appeals decision was *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir.1996) which for the first time explicitly adopted the state-created danger theory. There, the parent and legal guardian of Samantha Kneipp sued several Philadelphia police officers and the City of Philadelphia under § 1983. Samantha and her husband were having an altercation on a highway as they were walking home late on a cold January evening. She was in an obvious state of intoxication. After the police stopped them, her husband was allowed to return home to relieve a babysitter. Thereafter, the police officer sent Samantha on her way alone. She never made it. She was later found unconscious nearby, with permanent brain damage. Plaintiffs claimed that by voluntarily assuming responsibility for her protection when the police officers allowed her husband to leave for home by himself, they affirmatively created a danger and increased the risk that she might be injured when they later abandoned her. In reversing the District Court's grant of summary judgment in favor of the defendants, the Court of Appeals concluded that, "[w]hen viewed in the light most favorable to the legal guardians, the evidence submitted was sufficient to raise a triable issue of fact as to whether the police officers affirmatively placed Samantha in a position of danger." *Id.* at 1211.

Thereafter, the Court of Appeals handed down *Morse v. Lower Merion School District,* 132 F.3d 902 (3d Cir.1997) in which it affirmed the District Court's dismissal of a complaint where plaintiff had alleged a state-created danger under § 1983. In that case, the plaintiff's decedent had been a teacher at the Ardmore Child Care Center, which operated out of the Lower Merion High School. She was shot and killed at the Center by a local resident with a history of mental illness. At the time, construction workers were working in the building and it was alleged that the back entrance, used by the killer, had been left unsecured. The court reiterated a four prong test which must be met if a state actor is to be found liable under the state-created danger theory:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Id.* at 908; *see Kneipp,* 95 F.3d at 1208 (quoting *Mark,* 51 F.3d at 1152). The Court of Appeals determined that three of the four prongs had not been satisfied. The plaintiff's factual allegations, if true, did not establish that the harm ultimately caused was foreseeable and fairly direct, that the state actor acted in willful disregard for the safety of plaintiff, or that the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

We believe the case before us is closest factually to *DeShaney.* In that action, the Winnebago County DSS did not come to the aid of Joshua who it had every reason to believe was being physically abused by his father over a prolonged period of time.

**2.** The Court of Appeals in *D.R.* did not specifically decide if a state-created danger was a viable theory of liability under § 1983. The Court of Appeals also deferred the issue for another day in *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152–53 (3d Cir.1995).

The boy ended up profoundly retarded as a result of his traumatic injuries and had to be institutionalized. Similarly, in the present case, the police are alleged to have stood idly by and watched passively as several individuals assaulted and robbed the plaintiff. In contrast to *Kneipp*, there was no affirmative act on the part of the officers. The complaint does not accuse them of taking any affirmative action to create the incident that occurred in the nine hundred block of Washington Avenue in the early hours of July 12, 1998. They did not organize or participate in the Greek Picnic festivities or wrongdoing. They did not detain plaintiff or direct her to do anything. Their presence on Washington Avenue that night did not put plaintiff in a worse position than she would have been in had they not been on the scene. *See DeShaney*, 489 U.S. at 201, 109 S.Ct. 998. While the lack of response from the police officers to plaintiff's cries for help, if true, is unconscionable, it does not create a violation of plaintiff's right to substantive due process. As the Supreme Court made clear in *DeShaney*, the purpose of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196, 109 S.Ct. 998. Plaintiff's remedy, if any, lies elsewhere. What occurred here was criminal conduct by private citizens against the plaintiff, a private citizen, just as Joshua DeShaney's father, a private citizen, committed criminal conduct against his son, a private citizen. The Supreme Court concluded, "[a]s a general matter … a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. 998.

Plaintiff has not satisfied the fourth prong of the state-created danger test as set forth in *Morse* and earlier cases. She has not stated in her complaint any facts that "the state actors used their authority to *create* an opportunity that otherwise would not have existed for the third party's crime to occur." *Morse*, 132 F.3d at 908 (emphasis added). If the police officers' presence did not deter the assault on plaintiff, surely their absence would not have done so. Because plaintiff has not met the fourth prong, we need not decide whether the other three have been met.

■ Plaintiff's federal claim against the City of Philadelphia and the present and a former police commissioner also fails. A municipality can be held liable under § 1983 if the execution of one of its policies or customs results in a constitutional violation. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, if no constitutional violation occurs, a municipality cannot be held liable under § 1983, even if it has a policy or custom that leads to an undesirable result. *See Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Such is the case here. Since the "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," *DeShaney*, 489 U.S. at 197, 109 S.Ct. 998, there is no liability on the part of the City of Philadelphia and its police commissioners. Moreover, even assuming that such a custom or practice existed, it was directed at the public at large, and not at a discrete person or group of persons. As the complaint notes, it was a policy or practice generally affecting "innocent civilians" who may be the subject of the illegal activities or other harm during Greek Week. State-created danger liability under § 1983 does not exist unless the custom or practice or action is directed at a discrete person or group of persons. *See Morse*, 132 F.3d at 913–14.

We in no way condone what allegedly happened to plaintiff and sympathize with her plight. The perpetrators unquestionably committed serious crimes, if the complaint is to be believed. Nonetheless, the Supreme Court has ruled that there is no redress under § 1983 against the City of Philadelphia and its police for their omissions here.

Finally, plaintiff has asserted several state law claims pursuant to this court's supplemental jurisdiction under 28 U.S.C. § 1367. Since we are dismissing the federal claims, we will exercise our discretion not to hear the state law claims. To avoid a statute of limitations problem, plaintiff, of course, may exercise her transfer right under 42 Pa.Cons.Stat.Ann. § 5103(b).

### ORDER

AND NOW, this 9th day of January, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that this action is DISMISSED.