**Mark John PETERSON,**
**Plaintiff–Appellant,**

v.

**ARAPAHOE COUNTY SHERIFF, Board of County Commissioners of the County of Arapahoe, County of Arapahoe, and Does 1–4, Defendants–Appellees.**

No. 01CA1859.

Colorado Court of Appeals,
Div. I.

May 8, 2003.

Mark John Peterson, Pro Se.

Kathryn L. Schroeder, County Attorney, Timothy J. Knapp, Assistant County Attorney, L. Cary Unkelbach, Assistant County Attorney, Littleton, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiff, Mark John Peterson, appeals the judgment dismissing his complaint against defendants, the Arapahoe County Sheriff, the Board of County Commissioners of the County of Arapahoe, the County of Arapahoe, and Does 1–4. We affirm in part, reverse in part, and remand.

In his complaint, plaintiff alleged that on March 17, 2000, he was apprehended by agents of a bail bonding company whom plaintiff refers to as bounty hunters; the bounty hunters assaulted and battered him and eventually took him to the Arapahoe County Jail; the deputies refused to take him into custody because of his poor medical condition caused by the beatings; he told the deputies that he was afraid he would suffer additional beatings from the bounty hunters if he were not admitted to the jail; when custody was refused, the bounty hunters continued to beat him; and eventually, he was taken into custody at another jail and transported to the hospital, where he was admitted to the intensive care unit.

Plaintiff initially brought this action against the Arapahoe County Sheriff, the County of Arapahoe, and Does 1–4. Plaintiff asserted five claims for relief: (1) the deputies failed to take him into protective custody; (2) the Arapahoe County Sheriff and the County of Arapahoe failed to train or supervise the deputies adequately; (3) the Arapahoe County Sheriff's and the County of Arapahoe's policy and practice of refusing to accept custody of a person because of the person's medical condition violated plaintiff's constitutional rights; (4) defendants' actions violated plaintiff's rights, privileges, and immunities as guaranteed by the First, Fourth,

Fifth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution; and (5) defendants acted willfully and wantonly in refusing to accept him into custody.

Defendants moved to dismiss plaintiff's complaint. Defendants argued that plaintiff's state law tort claims were barred because plaintiff failed to provide the notice of claim required by § 24–10–109, C.R.S.2002, of the Colorado Governmental Immunity Act (GIA). Defendants filed affidavits supporting the lack of notice. Additionally, defendants argued that plaintiff's first, second, and third claims for relief should be dismissed because immunity is not waived under the GIA for those claims.

Defendants also argued that plaintiff had failed to set forth specific facts supporting willful and wanton conduct and that Arapahoe County cannot be liable for the conduct of a deputy sheriff.

Defendants further argued that plaintiff had failed to plead a claim against the sheriff individually because the complaint did not list any specific actions personally taken by the sheriff that violated plaintiff's constitutional rights. Defendants asserted that plaintiff failed to plead an official capacity claim and that such a claim may not be maintained against the sheriff in his official capacity or Arapahoe County as a public entity. Finally, defendants argued that under § 1983 the sheriff or Arapahoe County may not liable in a supervising capacity on a theory of respondeat superior.

In his amended complaint, plaintiff listed the board of county commissioners as a defendant. His supporting affidavit stated that he had mailed a notice of claim to the Arapahoe County Attorney on July 6, 2000, and that he gave a statement about the incident to an Arapahoe County deputy sheriff on August 28, 2000. Plaintiff asserted that defendants' failure to take him into custody to avoid incurring medical expenses, knowing that he had been beaten by the bounty hunters, constituted willful and wanton conduct. As to the § 1983 claims, he stated that defendants acted under color of law, that a special relationship existed between him and defendants such that defendants had an obligation

to protect him from harm, and that defendants increased his vulnerability to harm.

Defendants then renewed their motion to dismiss, which the trial court summarily granted.

## I. Arapahoe County

■ We first conclude that the claims against the county were properly dismissed.

Based on the decision in *Tunget v. Board of County Commissioners*, 992 P.2d 650 (Colo.App.1999), the Arapahoe County Sheriff's Department and Arapahoe County are considered separate public entities for purposes of the GIA. In *Tunget, supra*, 992 P.2d at 652, a division of this court recognized that "[t]he sheriff, not the county or the Board, has the right of control with respect to deputies." Thus, the sheriff is the appropriate governing entity to deal with a claim against a deputy sheriff. In accordance with statutory provisions, the sheriff may recover judgment against his or her sureties. Section 30–10–519 C.R.S., 2002.

Here, the sheriff, but not the county or the board of county commissioners could be liable for the claims against the deputies, and the trial court therefore properly dismissed the claims against Arapahoe County.

## II. State Law Claims

Plaintiff contends that the trial court erred in dismissing his state law claims against the remaining defendants. We agree.

### A. GIA Notice

■ We conclude that further proceedings are necessary to determine whether plaintiff gave adequate notice under GIA.

■ A motion to dismiss under the GIA involves the trial court's subject matter jurisdiction to hear an action, and it is properly resolved pursuant to C.R.C.P. 12(b)(1). *See Walton v. State*, 968 P.2d 636 (Colo.1998). Under C.R.C.P. 12(b)(1), the trial court is the fact finder and may hold an evidentiary hearing to resolve any factual dispute upon which the existence of its subject matter jurisdiction under the GIA may turn. *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995); *Trinity*

*Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993).

Section 24–10–109(1), C.R.S.2002, establishes as a jurisdictional prerequisite that any person seeking damages from a public entity or employee thereof must provide written notice within 180 days of discovering the injury that is the basis of the claim. *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200 (Colo.2000).

■ Whether a claimant has satisfied the requirements of § 24–10–109(1) presents a mixed question of law and fact. *See Trinity Broad. of Denver, Inc. v. City of Westminster, supra*. We will defer to the trial court's findings of fact unless they are clearly erroneous. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997).

In response to defendants' motion to dismiss, plaintiff submitted a copy of a letter he claims he sent by regular mail to the Arapahoe County Attorney on July 6, 2000. The last page of the letter indicates that a copy was provided to the Arapahoe County Sheriff. That letter apparently was mailed within the 180–day period as required by § 24–10–109(1), was addressed to the proper parties as required by § 24–10–109(3), C.R.S.2002, and set forth in narrative form some of the information required by § 24–10–109(2), C.R.S.2002.

However, because the letter was not sent by registered mail, plaintiff is not entitled to a presumption that the effective date of service is the date of mailing. *See Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187 (Colo.1996)(although nothing in the statute precludes service by regular mail, the plain terms of the statute do not provide that posting a notice by regular mail is a valid method of establishing the effective date of service). Further, the trial court did not make findings as to whether either the Arapahoe County Attorney or the Arapahoe County Sheriff received the letter prior to the expiration of the 180–day period.

The record also reflects that plaintiff executed a written statement before a sheriff's deputy on August 28, 2000, which was also within the 180–day period. The statement contains information similar to that contained

in the July 6, 2000, letter. However, there is no indication that the statement was provided to the sheriff or to the Arapahoe County Attorney.

Accordingly, because of the lack of findings on this issue, we are unable to determine whether plaintiff timely provided a notice of claim and whether the trial court properly dismissed plaintiff's state law claims based on his failure to comply with the requirements of § 24–10–109. Therefore, we are unable to affirm the trial court's dismissal of plaintiff's state law claims on this basis. On remand, the trial court must make further factual findings to determine the threshold question of jurisdiction.

### B. Willful and Wanton Conduct

■ It is not clear whether the trial court dismissed the claims for willful and wanton conduct because of an untimely notice or because of failure to state a claim as a matter of law. Because this issue may arise on remand, we address the substantive aspects of the claims. We conclude that plaintiff alleged sufficient facts to state a claim against the sheriff and the presently unknown deputies for willful and wanton conduct.

In any action alleging willful and wanton conduct of a public employee, the specific factual basis of such allegations shall be stated in the complaint. Section 24–10–110(5)(a), C.R.S.2002. The failure to plead the factual basis shall result in dismissal of the claim for failure to state a claim upon which relief can be granted. See § 24–10–110(5)(b), C.R.S. 2002.

Sheriffs and their sureties are responsible for the misconduct of their deputies. Section 30–10–506, C.R.S.2002; *Tunget v. Bd. of County Comm'rs, supra.* Thus, in Colorado, sheriffs are made liable for the torts of their deputies.

Although the phrase "willful and wanton" is not defined in the GIA, in *Moody v. Ungerer,* 885 P.2d 200 (Colo.1994), the supreme court analyzed several different definitions, all of which "involved an element of conscious disregard for the safety of others." *Jarvis v. Deyoe,* 892 P.2d 398, 401 (Colo.App.1994).

Plaintiff's amended complaint asserted that, despite his pleas to the deputies for help, they purposefully ignored his condition and obvious dilemma. His pro se pleading alleges that "upon seeing [his] physical condition," the deputies "knowingly and intentionally refused to accept ... custody ... while knowing ... that ... the beatings would continue." Plaintiff also implicated the sheriff by alleging that he was "charged with the responsibility of ... supervising ... all ... deputies." Plaintiff further asserts that the sheriff "failed to prevent the wrongful acts of his deputies." These allegations were sufficient to plead a claim based upon willful and wanton conduct against the deputies and, by operation of the statutorily imposed respondeat superior liability, against the sheriff. *See Davis v. Paolino,* 21 P.3d 870 (Colo.App.2001)(allegations that guard had spilled coffee and juice on the floor and that he intended someone to be injured by it, as shown by its presence for over two hours, was sufficient to plead a claim for willful and wanton conduct).

### III. Section 1983 Claims

■ Plaintiff contends that the trial court erred in dismissing his 42 U.S.C. § 1983 claims. We agree.

■ Section 1983 authorizes suits to redress deprivations of "any rights, privileges, or immunities secured by the Constitution and laws." *Henderson v. Gunther,* 931 P.2d 1150, 1154 (Colo.1997). To state a claim for relief under § 1983, a plaintiff need allege only that: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of certain federal rights. *See State v. Nieto,* 993 P.2d 493 (Colo.2000).

In this case, plaintiff alleged that defendants violated his rights, privileges, and immunities as guaranteed by the First, Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution. Under the circumstances presented here, we interpret plaintiff's claim as alleging that defendants violated his right to substantive due process.

■ The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249, 259 (1989); *Duong v. County of Arapahoe,* 837 P.2d 226 (Colo.App.1992). Thus, the general rule is that state actors are liable under the Due Process Clause only for their own acts and not for the violent acts of third parties. *Henderson v. Gunther, supra.*

■ In certain limited circumstances, however, the state has been found to have an affirmative duty to protect citizens from constitutional injury inflicted by a private person. Those circumstances have been framed as two exceptions to the general rule: (1) the special relationship exception; and (2) the danger creation exception. *Henderson v. Gunther, supra.*

The special relationship exception provides that in custodial or other settings in which the state has limited individuals' ability to care for themselves, the state has a constitutional obligation to protect them from being harmed by third parties. *DeShaney v. Winnebago County Dep't of Soc. Servs., supra; Jarvis v. Deyoe, supra.*

Here, the allegations of plaintiff's complaint established that he was not taken into custody by defendants. Thus, contrary to plaintiff's contention, a special relationship did not exist that would have constitutionally obligated defendants to protect him from harm. *See Jarvis v. Deyoe, supra.*

The danger creation exception provides that the state may be constitutionally obligated for failing to protect a person from harm, even in a noncustodial setting, when the state itself affirmatively created or enhanced the risk of harm. *See Henderson v. Gunther, supra* (listing cases in which danger creation exception would apply); *Jarvis v. Deyoe, supra* (citing various examples from other jurisdictions in which police officers may have violated due process by creating or enhancing a danger to the plaintiff).

■ However, the state actors must do more than merely create an environment in which harm occurs. Rather, the state actors must abuse their governmental power by subjecting a person to harm that would not have occurred in the absence of the state actor's conduct. *Henderson v. Gunther, supra.*

We conclude that defendants' failure to take plaintiff into custody may have offended a constitutional duty to protect. We note, for example, that a warrant to arrest had been issued, and this implicates an affirmative responsibility to take defendant into custody, which may be admissible in proving exacerbation and willful and wanton conduct. Cases finding no liability suggest that claims may exist if the government representative made the victim's situation worse. *Cf. DeShaney v. Winnebago County Dep't of Soc. Servs., supra* (no § 1983 liability even though defendants knew firsthand of the threat to the boy's safety, yet they failed to remove him from his father's custody or otherwise protect him from abuse); *Henderson v. Gunther, supra* (holding that danger creation exception did not apply in attack by inmate against prison employee in the absence of allegations that the defendants intentionally provided the inmate with a weapon or encouraged the attack in any way); *see also Windle v. City of Marion,* 321 F.3d 658 (7th Cir.2003)(police officer's failure to timely intervene to protect student from molestation of which that officer was aware did not violate student's due process rights under Fourteenth Amendment; police officer did nothing to create the danger or make worse any danger the student already faced); *Jones v. City of Philadelphia,* 185 F.Supp.2d 413 (E.D.Pa.2001)(police directing traffic at outdoor party did not violate the substantive due process rights of an assault victim when they allegedly made no response to her calls for help).

Here, the allegations of the complaint suggest that unknown deputies exacerbated his plight and increased his vulnerability to harm by failing to take him into custody under an outstanding warrant. Under these circumstances, the claim, absent further factual development, withstands a bare motion to dismiss for failure to state a claim.

The judgment is affirmed as to the dismissal of plaintiff's claims against Arapahoe

County and its board of commissioners. The judgment is reversed as to the dismissal of plaintiff's state law claims based upon failure to provide notice and the § 1983 claims against the individual deputies and the sheriff. The case is remanded to the trial court for further proceedings as needed to determine jurisdictional issues and the § 1983 claims. If it is determined that plaintiff gave timely notice, the state law claims shall be reinstated. Plaintiff also should be allowed the opportunity to obtain discovery, including the identity of the individual deputies.

Judge VOGT and Judge METZGER * concur.