Terri CRANDALL and Joann Hubbard, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

v.

CITY AND COUNTY OF DENVER, Colorado, d/b/a The Denver International Airport, a Colorado political subdivision, Defendant–Appellant.

No. 04CA1989.

Colorado Court of Appeals,
Div. I.

May 18, 2006.

Certiorari Granted Oct. 10, 2006.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

DAILEY, J.

Defendant, the City and County of Denver, brings this interlocutory appeal pursuant to § 24–10–108, C.R.S.2005, from the trial court's order denying its motion seeking dismissal, on governmental immunity grounds, of the complaint brought by plaintiffs, Terri Crandall and Joann Hubbard, individually and on behalf of others similarly situated. We affirm.

Plaintiffs brought this action to recover damages for injuries they allegedly received as a result of exposure to harmful environmental conditions at Denver International Airport (DIA), which is owned and operated by the City. Plaintiffs were both employed as customer service representatives for United Airlines in Concourse B at DIA.

Plaintiffs, individually and on behalf of others similarly situated, asserted claims of negligence, negligence per se, nuisance, premises liability, battery, and injunctive relief. Whether the class should be certified under C.R.C.P. 23 has not been ruled upon by the trial court.

The City moved to dismiss plaintiffs' claims against it on the basis that they were barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S. 2005. The City argued that plaintiffs had failed to comply with the notice requirements set forth in § 24–10–109, C.R.S.2005, of the GIA. In particular, the City argued that plaintiffs had failed to file a notice of claim within 180 days of discovery of their injuries, that the notice was insufficient with regard to where plaintiffs suffered their injuries, and that the notice requirements had not been met for the class members because they were not adequately identified under § 24–10–109.

In response, plaintiffs argued that the notice was timely and complied with all the requirements of the GIA. Plaintiffs also argued that the notice was sufficient to provide notice to the City of the class members' claims.

The trial court held an evidentiary hearing on the City's motion and subsequently issued a written order. The court granted the City's motion to dismiss as to all injuries occurring prior to February 2, 2002, which was 180 days prior to the notice of claim provided by plaintiffs on August 2, 2002, and denied the motion as to any injuries suffered on or after February 2, 2002. The court also ruled that the notice was sufficient with regard to the class claimants. The City then brought this appeal.

## I. Notice of Claim—Individual Plaintiffs

The City contends that the trial court erred in not dismissing plaintiffs' complaint on the basis of governmental immunity. We disagree.

### A. Legal Framework

■ Under the GIA, an injured person seeking damages from a public entity or

employee must provide written notice of the claim within 180 days of discovery of the injury. Sections 24–10–109(1), 24–10–118(1)(a), C.R.S.2005. The failure to comply with the 180–day period is an absolute bar to suit. *Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1206 (Colo.2000).

Generally, whether a claimant has filed a timely notice of claim that satisfies the requirements of § 24–10–109(1) presents a mixed question of law and fact that must be resolved by the trial court before trial. *Peterson v. Arapahoe County Sheriff,* 72 P.3d 440, 443 (Colo.App.2003). In making this determination, the trial court must employ the C.R.C.P. 12(b)(1) standard, under which the plaintiff bears the "relatively lenient" burden of demonstrating that notice was properly given. *See Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253, 1261 (Colo.2003).

When, as here, the jurisdictional facts relating to immunity are in dispute, the court should conduct an evidentiary hearing and enter findings of fact. *Gallagher v. Bd. of Trs.,* 54 P.3d 386, 391 (Colo.2002). The trial court's factual findings are reviewed under a clear error standard. *See Tidwell v. City & County of Denver,* 83 P.3d 75, 81 (Colo.2003); *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 925 (Colo.1993).

The notice must also substantially comply with § 24–10–109(2), C.R.S.2005, which requires a claimant to provide certain information regarding the claim. Substantial compliance means that the claimant must make a good faith effort to include within the written notice, to the extent reasonably possible, each item of information listed in § 24–10–109(2). *Dicke v. Mabin,* 101 P.3d 1126, 1132 (Colo.App.2004).

In determining whether the claimant has satisfied this requirement, the trial court may also consider to what extent, if any, the public entity has been adversely affected in its ability to defend against the claim by reason of any omission or error in the notice. *Woodsmall v. Reg'l Transp. Dist.,* 800 P.2d 63, 69 (Colo.1990). Thus, the purpose of the notice requirement is not to set a trap for the unwary, but rather to allow a public entity to promptly investigate and remedy dangerous conditions, to foster prompt settlement of meritorious claims, to make necessary fiscal arrangements to cover potential liability, and to prepare for defense of claims. *Jefferson County Health Servs. Ass'n v. Feeney,* 974 P.2d 1001, 1003 (Colo. 1998).

### B. Factual Background

The trial court found that there have been different types of environmental problems at DIA since it opened in 1995. The court noted that common maintenance problems included clogged floor drains; sewage problems from backed up toilets, broken pipes, or clogged sewage pipes; the formation of mold, primarily in areas of water leakage and use; and the spillage or leakage of various chemicals used at DIA. The court additionally noted that most of these problems were adequately remedied by the City either internally or, on occasion, with the assistance of outside consultants.

The court determined that the maintenance department at DIA received about one noxious odor call per week from Concourse B, where plaintiffs worked. Concourse B contains over 2,000,000 square feet on seven levels, with each level containing approximately 285,000 square feet.

Hubbard worked as a customer service representative for United Airlines from 1995, when DIA opened, until February 19, 2002, when she quit, allegedly because of health issues caused by environmental problems at DIA. The court found that although Hubbard appeared to have exaggerated the pervasiveness and severity of her symptoms, she had experienced a wide variety of adverse symptoms on a frequent and recurring basis while she worked in Concourse B. In particular, the court noted that Hubbard suffered from a chronic recurring dermatitis condition, a variety of upper respiratory problems, dizziness, tingling in her fingers, earaches, headaches, nausea, and at least one fainting spell. The court found that in 1999, when Hubbard took time off for an unrelated surgery, her symptoms subsided, but that they immediately recurred when she returned to work.

The final incident occurred on February 19, 2002, when she developed a severe skin condition that required her to leave work and seek medical attention. After leaving work at DIA, Hubbard's skin condition and other symptoms gradually improved to the point where she is largely asymptomatic.

Plaintiff Crandall has worked for United Airlines as a customer service representative since DIA opened in 1995 and continued to be employed by United Airlines at DIA through the date of the trial court's decision. Crandall also experienced a variety of symptoms that she attributed to environmental conditions on Concourse B. The court noted that she had pneumonia on at least four occasions and that she had a chronic and recurring pneumonitis condition, chronic bronchitis, and chronic pulmonary disease. The court found that these illnesses had all become symptomatic when Crandall was exposed to environmental conditions on Concourse B.

The court noted that no medical evidence was presented regarding whether the environmental conditions at DIA caused both Hubbard's and Crandall's conditions, or whether those conditions resolved completely after each plaintiff spent time away from DIA. The court additionally found that each plaintiff appeared to experience symptoms several times per month and these symptoms occurred when plaintiffs moved throughout the main level of Concourse B and when they worked in the Red Carpet Club room on the mezzanine level of Concourse B. Because each plaintiff complained of frequently sensing noxious odors at various locations on Concourse B, the court found that it did not appear that plaintiffs could specify the location or the source of the environmental problem causing their recurring symptoms.

Plaintiffs filed their notice of claim on August 2, 2002. The notice provided: "The purpose of this letter is to provide notice of the claims of our clients, and all others similarly situated, against the City and County of Denver, Colorado, in its individual capacity and as the governing body for the Denver International Airport pursuant to C.R.S. 24–10–109." The notice listed plaintiffs and twenty-five other individuals as claimants and provided their addresses. The notice also provided: "This notice is also being sent on behalf of other individuals, who have been exposed to and injured by the environmental conditions at Denver International Airport, whose identities are not known."

Further, the notice provided that (1) the claimants and others similarly situated "suffer from various health conditions as a result of exposure to the environmental conditions existing at Denver International Airport, including, but not limited to, mold contamination and failure to contain raw sewage"; (2) laboratory tests performed on February 23, 2002, on samples of carpet taken from the United Airlines concourse at DIA indicated recent sewage contamination; and (3) testing performed in May 2002 revealed the presence of certain molds.

### C. Discovery of Claim

■ The City argues that plaintiffs' notice was untimely. It asserts that plaintiffs discovered their injuries for purposes of giving notice under the GIA shortly after DIA opened in 1995 and that each injury suffered by plaintiffs was the development of a condition which was continuous and gave rise to each of plaintiffs' later symptoms. Accordingly, the City argues that the trial court erred in relying on the decision in *Gallagher v. Board of Trustees, supra,* to find that plaintiffs had suffered separate injuries for purposes of the GIA such that they could proceed with their claims for any injuries arising on or after February 2, 2002. We are not persuaded.

In *Gallagher, supra,* the supreme court held that in a whistleblower case, the factual issue to be determined for purposes of notice under the GIA is when the employee knew or should have known that he was being retaliated against for some protected conduct. The court rejected the argument that the continuing violation doctrine can be applied to claims brought under the GIA. The court concluded that the district court must resolve when the employee discovered his injury for purposes of the GIA's 180–day time limit without regard to the continuing violation doctrine. *Gallagher v. Bd. of Trs., supra,* 54 P.3d at 391–93. The court further concluded

that "[i]f the [trial] court finds that acts claimed by Gallagher as retaliatory conduct occurred outside the 180–day limit, those acts will therefore be barred from his whistle-blower claim." *Gallagher v. Bd. of Trs., supra,* 54 P.3d at 393. Implicit in the court's determination is that a prior act of retaliatory conduct does not preclude a claimant from filing a valid notice of claim with regard to a subsequent act of retaliation.

Here, the trial court concluded that, whether or not plaintiffs' recurring symptoms could be traced to one ongoing illness, each time a symptom recurred it was an injury within the meaning of the GIA because the recurring symptoms resulted from varying and recurring environmental conditions at different locations on Concourse B. As such, the court found the case to be analogous to the circumstances in *Gallagher, supra.*

We conclude that the record supports the trial court's conclusion. Although plaintiffs did not present any testimony from medical experts, their testimony and the medical records submitted to the court supported their claims that the injuries they suffered were related to environmental problems at DIA. In addition, while plaintiffs had ongoing illnesses, and might have had heightened sensitivities to certain environmental conditions, the record supports the trial court's determination that the various medical problems they experienced arose from separate incidents at DIA and constituted separate injuries for purposes of giving notice under the GIA. *See Gallagher v. Bd. of Trs., supra; see also* § 24–10–103(2), C.R.S.2005 (defining "injury" as meaning "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant").

Therefore, because the burden to establish notice under the GIA is relatively lenient, and the trial court's findings must be upheld unless clearly erroneous, we conclude that the court did not err in finding that plaintiffs' notice of claim was proper for any injuries they suffered on or after February 2, 2002.

Consequently, the court did not err in denying the City's motion to dismiss on this basis.

### D. Location of Injury

The City argues that plaintiffs' notice was so unspecific as to location that it defeated one of the primary purposes of the notice, namely to allow it to investigate and to correct any environmental contamination problems. Thus, the City argues that the notice was inadequate under § 24–10–109(2). We are not persuaded.

Section 24–10–109(2)(b), C.R.S.2005, provides that the notice must contain "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of."

The trial court determined that while the notice arguably should have been more specific as to location, nevertheless plaintiffs had substantially complied with § 24–10–109(2). The court noted that each plaintiff testified that she smelled foul odors on numerous occasions in various locations throughout Concourse B. The court also noted that it was not persuaded that plaintiffs could reliably pinpoint the location of the source of the environmental problems that caused their symptoms.

■ We agree with the trial court that while the notice could have been more specific as to location, it substantially complied with the requirements of § 24–10–109(2)(b). The notice gave the City sufficient information from which it could have investigated plaintiffs' claims. The City could have interviewed plaintiffs or some of the other claimants listed in the notice of claim to help define where these individuals believed they experienced environmental problems in Concourse B. In addition, it is apparent that plaintiffs constantly moved to different locations within Concourse B to perform their jobs. Thus, such movement hindered plaintiffs' ability to limit their notice to a particular location. Moreover, the record indicates that the City was aware of odor and mold issues within Concourse B and that several studies had been undertaken to address those issues.

Therefore, under these circumstances, we conclude that plaintiffs substantially complied with § 24–10–109(2). Accordingly, the trial court did not err in failing to dismiss plaintiffs' complaint on the basis that the notice was not more specific as to location.

## II. Notice of Claim—Class Plaintiffs

The City contends that a proper notice of claim under the GIA was not submitted for the unidentified prospective class members. We disagree.

The GIA does not directly address whether a class action in tort may be brought against a public entity. However, we note that § 24–10–114.5, C.R.S.2005, places limitations on the amount of attorney fees that a prevailing plaintiff in a class action may recover against a public entity. In addition, § 13–17–203, C.R.S.2005, which mirrors the language in § 24–10–114.5, also addresses the recovery of attorney fees in a class action brought against any "public entity" as that term is defined in § 24–10–103(5), C.R.S. 2005, of the GIA. Furthermore, once a waiver of immunity is established under the GIA, § 24–10–107, C.R.S.2005, provides that the liability of a public entity shall be determined in the same manner as if the public entity were a private person.

██ Implicit in these statutory provisions is the General Assembly's intent to allow a plaintiff to bring a class action in tort against a public entity. Additionally, we find the General Assembly's inclusion in the GIA of a provision limiting the amount of attorney fees a prevailing plaintiff may recover against a public entity in a class action to be particularly supportive of this interpretation. Moreover, we note that a division of this court has held that a legitimate state interest served by the attorney fees statute included protecting class members' recovery for unlawful governmental action. See Buckley Powder Co. v. State, 70 P.3d 547, 563 (Colo.App.2002)(statutory limitation on attorney fees in class action litigation against public entities did not violate equal protection guarantees).

Nevertheless, the GIA is silent regarding what notice is required with regard to un-named class participants. Although no appellate court in Colorado has addressed this issue, other jurisdictions that have considered it have reached varying outcomes as to what the notice should contain.

In City of San Jose v. Superior Court, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, 707 (1974), the California Supreme Court rejected the argument that each member of a purported class must file an individual claim prior to bringing suit against a public entity. The court held that to require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions. Thus, the court concluded that to satisfy the claims statutes, the class claim must provide the name, address, and other specified information concerning the representative plaintiff and then sufficient information to identify and make ascertainable the class itself. City of San Jose v. Superior Court, supra, 115 Cal.Rptr. 797, 525 P.2d at 708.

Striking a similar balance, the Utah Supreme Court has held that a notice of claim in a class action lawsuit need not contain the name of each potential class plaintiff. The court determined that such a requirement would nullify the state's class action rule, which provides that one or more members of a class may sue or be sued as representative parties on behalf of all. Therefore, because the notice was filed by the claimants "individually and . . . as representative[s] of a class," the court concluded that it complied with the requirements of the state's immunity act. Houghton v. Dep't of Health, 125 P.3d 860 (Utah 2005).

Imposing a less stringent standard, a Washington court has held that the legislature's waiver of the state's sovereign immunity to tort actions encompasses class actions in tort. The court also held that when a tort action against the state is properly initiated by a plaintiff who has timely filed a notice of claim, any additional plaintiffs who are added to the action when it is certified for class treatment need not separately fulfill the notice requirement. The court rejected the argument that a class action for tort damages may be maintained only if either all members of the class have complied individu-

ally with the statutory requirements for filing a tort claim or a properly filed tort claim gives notice that the claimant intends to seek class certification. *Oda v. State*, 111 Wash. App. 79, 44 P.3d 8, 12–13 (2002).

 The purpose of a class action is to bring together in one action a large number of individuals whose names may be unknown to the original parties. *See* C.R.C.P. 23. However, the procedures under C.R.C.P. 23 to identify and notify the members of the class are not available until after the action is commenced. Thus, requiring dismissal of all class plaintiffs who have not filed a notice of claim before commencement of the suit would make it virtually impossible to proceed with a class tort action against a public entity. Nevertheless, we agree with those courts that have held that the notice of claim must provide notice to the public entity of a possible class action. *See, e.g., City of San Jose v. Superior Court, supra; Houghton v. Dep't of Health, supra*. Thus, if the notice of claim satisfies the notice requirements set forth in the GIA and provides that it is filed on behalf of the potential class members, we conclude that it is sufficient as to the unnamed potential class members.

Here, the notice of claim filed by plaintiffs identified twenty-five other claimants and was filed on behalf of "all others similarly situated." (Because the issue is not before us, we do not decide whether "persons who have entered the airport but are not employed by the airport" qualify as "others similarly situated" to the named plaintiffs.) The notice also explained that the claimants' injuries arose from environmental conditions at DIA, including mold contamination and the failure to contain raw sewage. And the notice stated that certain laboratory tests revealed the presence of sewage contamination in the carpet on Concourse B and the presence of certain molds.

 Therefore, because nothing in the GIA indicates that the General Assembly declined to waive immunity for a class action in tort, and the notice filed by plaintiffs substantially complied with the requirements of § 24–10–109(2) and informed the City of a potential class action, we conclude that it satisfied the requirements of the GIA. Consequently, we further conclude that the trial court did not err in finding that the notice of claim provided by plaintiffs was sufficient with regard to the unnamed potential class members.

The order is affirmed.

Judge MÁRQUEZ and Judge ROMÁN concur.