**BROWN GROUP RETAIL, INC., a Pennsylvania corporation, Plaintiff–Appellee and Cross–Appellant,**

v.

**STATE of Colorado and Colorado Department of Transportation, Defendants–Appellants and Cross–Appellees.**

No. 04CA1874.

Colorado Court of Appeals, Div. V.

Aug. 24, 2006.

Certiorari Granted April 9, 2007.

Davis Graham & Stubbs, LLP, Robert W. Lawrence, Dean C. Miller, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

John W. Suthers, Attorney General, Kathleen L. Spalding, Assistant Attorney General, Harry Morrow, Assistant Attorney General, Megan Paris Rundlet, Assistant Attorney General, Denver, Colorado, for Defendant–Appellants and Cross–Appellees.

Opinion by Judge WEBB.

In this groundwater contamination case, defendants, the State of Colorado and the Colorado Department of Transportation (collectively CDOT), bring an interlocutory appeal from the trial court's order denying their motion, made under the Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2005, to dismiss unjust enrichment, contribution, and declaratory judgment claims brought by plaintiff, Brown Group Retail, Inc. (Brown Group). Brown Group cross-appeals from the trial court's order dismissing its claims for trespass and negligence on governmental immunity grounds. We affirm.

Brown Group has owned property in Denver, commonly known as the Redfield site, since 1971. Chlorinated solvents used in manufacturing processes contaminated groundwater below the site, which migrated into an adjacent residential neighborhood. Brown Group has spent approximately $14 million remediating environmental damage to the site and the neighborhood.

CDOT owns property, commonly known as the Region 6 Headquarters, that is contiguous to and upgradient from the Redfield site. From 1965 through the mid–1970s, CDOT disposed of chlorinated solvents in a dry well on its property. CDOT has spent approximately $4 million remediating environmental damage, mostly on the Redfield site.

Brown Group brought this action to recover CDOT's share of remediation costs it incurred, both on the Redfield site and in the neighborhood. Brown Group alleged that contaminants from the Region 6 Headquarters entered the groundwater, migrated downgradient to the Redfield site, mixed with the contamination from the Redfield site, and then migrated further into the neighborhood.

CDOT moved to dismiss Brown Group's complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction. CDOT asserted that all of Brown Group's claims "lie in tort or could lie in tort," § 24–10–108, C.R.S.2005, and therefore were subject to the GIA, but Brown Group did not give notice within 180 days as the GIA requires. The court dismissed Brown Group's claims for trespass and negligence on this basis, but determined that Brown Group's claims for unjust enrichment, contribution, and a declaratory judgment could proceed because they did not and could not lie in tort.

### I. Unjust Enrichment, Contribution, and Declaratory Judgment

■ CDOT contends Brown Group's claims for unjust enrichment, contribution, and a declaratory judgment either lie in tort or could lie in tort because these claims are based on the same tortious conduct as Brown Group's claims for negligence and trespass, which the trial court dismissed. Therefore, according to CDOT, they are barred by the GIA. We disagree.

■ In Colorado, statutory governmental immunity bars most claims against a public entity that lie in tort or could lie in tort, regardless of the cause of action or the form of relief chosen by the claimant. Section 24–10–108. Whether governmental immunity bars a claim is a question of subject matter jurisdiction that, if raised before trial, is properly addressed by the trial court as a

C.R.C.P. 12(b)(1) motion to dismiss. *Tidwell v. City & County of Denver,* 83 P.3d 75 (Colo.2003).

The determination of whether a particular claim lies in tort or could lie in tort is made on a case-by-case basis, *Berg v. State Bd. of Agric.,* 919 P.2d 254 (Colo.1996), considering the nature of the injury and the relief sought. *City of Colorado Springs v. Conners,* 993 P.2d 1167 (Colo.2000). Our review is de novo. *City of Colorado Springs v. Conners, supra.*

To recover for unjust enrichment, a plaintiff must show that (1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that retaining the benefit without paying its value would be inequitable. *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n,* 649 P.2d 1093 (Colo.1982). The scope of this remedy is broad, cutting across both contract and tort law, with its application being guided by the underlying principle of avoiding unfair benefit to one party at the expense of another. *Engel v. Engel,* 902 P.2d 442 (Colo. App.1995).

A claim for equitable relief that does not or could not lie in tort is not barred by the GIA. *See CAMAS Colo., Inc. v. Bd. of County Comm'rs,* 36 P.3d 135 (Colo.App.2001)(quantum meruit). Equitable relief has been allowed against a governmental entity when necessary to prevent manifest injustice. *See Martinez v. Colo. Dep't of Human Servs.,* 97 P.3d 152 (Colo.App.2003)(plaintiff stated claim for unjust enrichment against the state to reduce reimbursement owed to the state by the state's pro rata share of his attorney fees); *Kohn v. City of Boulder,* 919 P.2d 822 (Colo.App.1995)(equitable estoppel claim was based on plaintiff's reliance on representations as to city's actual policy, not on a misrepresentation of city policy, and thus was not based in tort).

A contribution claim is separate and distinct from the underlying tort claim. *Coniaris v. Vail Assocs., Inc.,* 196 Colo. 392, 586 P.2d 224 (1978). Contribution is the right of one who has discharged a common liability to recover from another who is also liable. *Martinez v. Cont'l Enters.,* 730 P.2d 308 (Colo.1986); *Humphrey v. O'Connor,* 940 P.2d 1015 (Colo.App.1996); *see also* Restatement (First) of Restitution § 81 (1937) ("Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another ... is entitled to contribution from the other...."). Thus, contribution is similar to unjust enrichment for this purpose.

CDOT cites no case, and we have found none, involving a contribution claim under the GIA.

Our analysis is informed by *City of Colorado Springs v. Conners, supra,* where the supreme court stated that claims under the Colorado Civil Rights Act are noncompensatory, equitable in nature, and designed to make the claimant whole in a particular setting. The court recognized that "the same discriminatory conduct that violates a civil rights statute, for example, could also form the basis of a common-law suit for injuries in tort." *City of Colorado Springs v. Conners, supra,* 993 P.2d at 1176. Nevertheless, the court concluded that claims under the Civil Rights Act are not for injuries that lie in tort or could lie in tort for purposes of the GIA.

Here, in its claims for unjust enrichment and contribution, Brown Group did not seek compensation for damage to the Redfield site, such as diminution in market value, caused by contamination originating from the Region 6 Headquarters. Rather, Brown Group sought to be made whole because CDOT did not contribute its fair share of the environmental response costs that Brown Group had incurred, and CDOT thereby inequitably benefited from Brown Group's payment of those costs. Thus, these claims do not arise from CDOT's tortious failure to use reasonable care in storing, handling, or disposing of the industrial solvents, but from Brown Group's disproportionate remediation efforts.

Hence, we conclude that the unjust enrichment and contribution claims are equitable because they are more like the claims in *City of Colorado Springs v. Conners, supra,* than

those in *Allen Homesite Group v. Colorado Water Quality Control Commission*, 19 P.3d 32, 35 (Colo.App.2001)(equitable estoppel "typically involves misstatements of fact or other misrepresentation by a government agency" and thus "is deemed to be a tort claim for purposes of the GIA"), and *Robinson v. Colorado State Lottery Division*, 155 P.3d 409, 2006 WL 1170983 (Colo.App. No. 04CA1785, May 4, 2006) (restitution and unjust enrichment claims based on precontract negligence or fraudulent misrepresentation deemed to be tort claims under the GIA).

We are not persuaded by CDOT's contention that because the same factual basis underlies all the claims, including those which the trial court dismissed as based in tort, the remaining claims could lie in tort. *See Berg v. State Bd. of Agric.*, supra, 919 P.2d at 259 ("Defendants reason that because the same factual basis underlies all of the claims, they are all necessarily based in tort. We do not agree."); *CAMAS Colo., Inc. v. Bd. of County Comm'rs*, supra (court separately analyzed each of the claims, all of which arose from similar facts, to determine whether it was barred by the GIA).

To hold otherwise could imperil a party's prerogative of pleading alternative theories. *See* C.R.C.P. 8(e)(2) ("A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both."); *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224 (Colo. App.2000). This is not a case where the alternative theories are "so inconsistent that the assertion of one necessarily repudiates the assertion of the other." *Jones v. City of Aurora*, 772 P.2d 645, 647 (Colo.App.1988).

Accordingly, we further conclude that Brown Group's claims for unjust enrichment and contribution are not subject to the GIA, and because Brown Group's declaratory judgment claim is based on its contribution claim, the trial court did not err in refusing to dismiss any of these three claims.

## II. Trespass and Negligence

In its cross-appeal, Brown Group contends the trial court erred in finding that, because it failed to provide timely notice of its trespass and negligence claims, they were barred by the GIA. We disagree.

### A. Notice of Claim

■ Under the GIA, an injured person seeking damages from a public entity must give the entity written notice of the claim within 180 days of discovering the injury. Section 24–10–109(1), C.R.S.2005. Compliance with the 180–day period is a jurisdictional prerequisite to suit, and the General Assembly intended that courts strictly apply the 180–day time limit. *Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200 (Colo.2000).

■ For purposes of notice under the GIA, the 180–day period "is triggered when a claimant has only discovered that he or she has been wrongfully injured." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 923 (Colo.1993); *see also Masters v. Castrodale*, 121 P.3d 362 (Colo. App.2005). In *Trinity Broadcasting*, a case involving migration of water from a city facility onto the claimant's property, which the court described as a continuing trespass, the court held that the claimant should have discovered its injury when it first knew or should have known that cracks in the walls and floors of a building on its property were the result of the water. *See also Abrahamson v. City of Montrose*, 77 P.3d 819 (Colo. App.2003) (claimant's notice obligation started when it first discovered water damage from a sewer pipe disconnected by the city).

■ In general, whether a claimant has filed a timely notice satisfying the requirements of § 24–10–109(1) presents a mixed question of law and fact that must be resolved by the trial court before trial. *Peterson v. Arapahoe County Sheriff*, 72 P.3d 440 (Colo.App.2003). If this jurisdictional issue involves a factual dispute, the reviewing court applies a clear error standard of review to the trial court's factual findings. *Springer v. City & County of Denver*, 13 P.3d 794 (Colo.2000). Only where the facts are undisputed is appellate review of timeliness de novo. *Tidwell v. City & County of Denver*, supra.

## B. Trespass

We reject Brown Group's argument that under the continuing trespass doctrine, which the supreme court articulated in *Hoery v. United States*, 64 P.3d 214 (Colo. 2003), it was injured for purposes of the GIA by CDOT's trespass on each of the 180 days before the date it gave notice to CDOT.

In *Hoery,* the supreme court held that for statute of limitations purposes in continuing contamination cases, whether based on trespass or nuisance, each day of repetition or continuance constitutes another wrong giving rise to a new cause of action. The court explained that a claim based on a continuing trespass does not begin to accrue until the tortious conduct has ceased. The court did not address the GIA, however, because the issue was not presented.

CDOT urges us to rely instead on *Gallagher v. Board of Trustees*, 54 P.3d 386 (Colo. 2002), where the supreme court held that the "continuing violation" doctrine did not apply in determining when an employee in a wrongful discharge retaliation case discovered his injury for purposes of the GIA. This doctrine was developed by federal courts as an equitable method to avoid the 300–day time limit imposed by Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5, for filing a mandatory administrative discrimination charge. *See generally Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368 (1986) (cited in *Gallagher* for its discussion of the history of the doctrine), *overruled* by *Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 696 N.W.2d 646 (2005).

The *Gallagher* court distinguished Title VII from the GIA because a notice of claim is both a condition precedent and a jurisdictional prerequisite to a suit under the GIA. The court explained that the notice requirement of the GIA, as a nonclaim statute, is not subject to equitable defenses such as waiver, tolling, or estoppel. It concluded that the determining factor for giving notice under the GIA was when the employee knew or should have known that he had been retaliated against.

Nevertheless, according to Brown Group, *Gallagher* implies that failure to give timely notice based on an earlier retaliatory act does not preclude filing a valid notice based on a later retaliatory act. *See Gallagher v. Bd. of Trs., supra,* 54 P.3d at 393 ("If the [trial] court finds that acts claimed by Gallagher as retaliatory conduct occurred outside the 180–day limit, *those acts* will therefore be barred from his whistleblower claim." (emphasis added)). A division of this court has so interpreted *Gallagher* in *Crandall v. City & County of Denver*, 143 P.3d 1105 (Colo. App. 2006).

On the facts presented here, neither *Gallagher* nor *Crandall* requires us to apply the *Hoery* continuing trespass analysis in determining timely notice under the GIA. *Gallagher* dealt with a series of separate retaliatory acts occurring over several years. Likewise, over several years the plaintiffs in *Crandall* suffered recurring symptoms that "resulted from varying and recurring environmental conditions at different locations" on the DIA concourse where they worked. *Crandall v. City & County of Denver, supra,* 143 P.3d at 1110. The division concluded that "the record supports the trial court's determination that the various medical problems they experienced arose from separate incidents at DIA and constituted separate injuries for purposes of giving notice under the GIA." *Crandall v. City & County of Denver, supra,* 143 P.3d at 1110.

Here, in contrast, the trial court identified no such "separate incidents." Rather, it found that "Brown Group should have known the contaminants were traveling off its property ... into the residential areas" as well as that "the contaminants traveling off its property were, in part, coming from the property owned by CDOT" as of December 1994, years before it gave notice under the GIA. On appeal, Brown Group does not dispute these findings.

Moreover, *Hoery* decided only when a cause of action accrues for statute of limitations purposes. In that regard, a cause of action for injury to property "shall be considered to accrue on the date both the injury *and its cause* are known or should have been known by the exercise of reasonable dili-

gence." Section 13–80–108(1), C.R.S.2005 (emphasis added). In contrast, "for purposes of the CGIA, the plaintiff need not yet know the cause of the injury." *Gallagher v. Bd. of Trs., supra,* 54 P.3d at 391.

Accordingly, because the trial court found that Brown Group had known of contamination migrating from the Region 6 Headquarters onto the Redfield site years before giving CDOT notice, we conclude that the trial court properly dismissed Brown Group's trespass claim for lack of timely notice.

### C. Negligence

■ We also reject Brown Group's argument that for purposes of its negligence claim, it did not discover that it had been injured under the GIA until it had begun paying response costs to remediate environmental harm to the adjacent neighborhood. According to Brown Group, those costs are a separate injury caused by CDOT contamination, distinct from damage to the Redfield site also caused by CDOT. *See* § 24–10–103(2), C.R.S.2005 ("injury" under the GIA includes "damage to or loss of property").

■ But Brown Group cites no authority, and we have found none, suggesting that the GIA permits an injured party to ignore evidence which would cause a reasonable person to know of an injury, and then much later give timely notice of a different category or type of damages traceable to the same act or omission that caused the initial injury. On the contrary, to commence the running of the 180–day notice period, a claimant need only have discovered the fact and cause of a wrongful injury, but need not yet know the extent of the resulting damage. *Abrahamson v. City of Montrose, supra.*

Brown Group's argument conflates the fact of injury with the nature and extent of resulting damages. Once Brown Group knew—as the trial court found that it did by December 1994—of contamination from Region 6 Headquarters having migrated to the Redfield site and beyond, it could have given CDOT notice of this fact and requested damages for remediation costs that would be incurred for both the Redfield site and the neighborhood downgradient. *Cf. State*

*Comp. Ins. Fund v. City of Colorado Springs,* 43 Colo.App. 112, 602 P.2d 881 (1979)(notice may be given prior to date amount of damages is established).

Nor are we persuaded by Brown Group's reliance on *Brady v. City & County of Denver,* 181 Colo. 218, 220, 508 P.2d 1254, 1255 (1973), which dealt with the notice requirement under a predecessor statute and involved "a claim against a city by a tort-feasor seeking indemnity for secondary injuries." The secondary injury arose from negligent medical treatment by Denver General Hospital of the pedestrian injured in an automobile-pedestrian collision, and the driver sought indemnification from the city when the pedestrian disclosed in an action against the driver that his damages included injuries suffered during his hospitalization. Because the city was not responsible for the primary injury caused by the driver's car striking the pedestrian, the court concluded that the statutory notice period should not begin to run "until such time as the alleged tort-feasor receives knowledge of the occurrence of the secondary injury." *Brady v. City & County of Denver, supra,* 181 Colo. at 222, 508 P.2d at 1256.

Here, we discern no similar "secondary injury" because, as between Brown Group and CDOT, only one tortious act occurred: CDOT's alleged negligence in handling, storing, and releasing contaminants, which damaged both the Redfield site and, later, the neighborhood. Thus, unlike in *Brady,* requiring Brown Group to have given CDOT notice when it first knew or should have known that the CDOT contaminants had migrated to the Redfield site and beyond imposes neither an "unfair burden" nor an "impossible requirement." *Brady v. City & County of Denver, supra,* 181 Colo. at 222, 508 P.2d at 1256.

■ Further, the purposes of the notice requirement include avoiding prejudice to the governmental entity, encouraging settlement, and providing public entities the opportunity to investigate claims, remedy conditions, and prepare a defense. *Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253 (Colo. 2003). These purposes would be defeated if a party could file a timely notice of claim

years after it first discovered an injury, merely by identifying a different type or category of injury from the same initial cause.

Accordingly, we conclude that Brown Group was required to give notice within 180 days of the date of its initial injury, even if it was not then aware of other damages that it might suffer, such as bearing CDOT's share of later remediation costs, and therefore the trial court did not err in dismissing Brown Group's negligence claim for lack of timely notice under the GIA.

The orders are affirmed.

Judge BERNARD and Judge METZGER * concur.